263 So.2d 632 (1972)
B. Roy GIBSON, Jr., and St. Joseph Telephone and Telegraph Company, a Corporation under the Laws of the State of Florida, Appellants,
v.
Joseph A. MALONEY, d/b/a the Apalachicola Times, Appellee.
No. P-392.
District Court of Appeal of Florida, First District.
June 13, 1972.
Rehearing Denied July 10, 1972.
*633 Larry G. Smith, of Isler, Welch, Bryant, Smith, Higby & Brown, Panama City, for appellants.
Truett & Watkins, Tallahassee, for appellee.
SPECTOR, Chief Judge.
Appellee's libel action against appellants has been considered by this court on an earlier occasion. Gibson v. Maloney, 214 So.2d 89.
In that case, we affirmed a libel judgment against appellants in the amount of $10,000 compensatory damages and $5,000 punitive damages. The Florida Supreme Court granted certiorari and reversed this court, holding that appellee made himself a "public figure" by virtue of his newspaper publishing activities; and, therefore, under the holdings in Abram v. Odham, Fla., 89 So.2d 334; Jacova v. Southern Radio and Television Company, Fla., 83 So.2d 34; and New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686, the statement that gave rise to this suit was fair comment on a public matter relating to an individual who had by choice made himself newsworthy and a part of the passing scene. See Gibson v. Maloney, 231 So.2d 823. So holding, the Supreme Court directed us to remand the cause for a new trial upon proper instruction.
Upon remand a second trial was held in January of 1971 which resulted in a mistrial when the jury was unable to agree on a verdict. In May 1971, a third trial was held which resulted in the judgment against both appellants for $5,000 compensatory damages and $20,000 punitive damages against the corporate appellant only.
The facts underlying this controversy are fully set forth in the two prior appellate decisions cited above, necessitating only a brief recitation of them in the opinion where required. Appellant Gibson is an officer of the corporate appellant. In 1965, while addressing the Port St. Joe Rotary Club, he made the following statement:
"Now, I shall take Apalachicola: Our exchange there in the year 1964 lost 74 *634 telephones  only exchange that we have that showed any loss in telephones  and, in my opinion, this loss can be attributed largely to the local newspaper in Apalachicola and its publisher, who seems to take pleasure in berating and abusing any business interest in his community, including the larger taxpayers in his County; and, in my opinion, frequently, in referring to the Alfred I. duPont Estate and its various interests, not only vents his displeasure, venom, and, in some instances, outright falsehoods  this in spite of the fact that the interests of the Alfred I. duPont Estate are one of the largest taxpayers in the County.
* * * * * *
"In closing, I shall simply say that I think we in Port St. Joe, and in all of the communities where the St. Joseph Telephone & Telegraph Company furnishes telephone services  with the exception of Apalachicola  are fortunate in having newspapers, in their communities, or near them, that welcome and invite business and industry. Business and industry do not go where they are unwanted and vilified, but where they are wanted and invited."
Thereafter, Gibson had the speech printed and mailed to some 6,000 telephone subscribers of the company and appellee brought this action, alleging that he was libeled by the appellants' conduct. The trials, judgments and appellate proceedings described above ensued.
The first point raised by appellant for reversal is that the trial court erred in refusing to charge the jury that the plaintiff was, as a matter of law, a public figure and that therefore plaintiff was entitled to recover only upon proof that Gibson made the defamatory statement complained of with actual malice.
The trial court gave the following instruction to the jury on the "public figure" issue:
"There are some different rules which are applicable when the person who seeks to recover for defamation is what is known as a public figure. The public figure is not necessarily a public official, but may be anyone whose occupation or activities cause him to stand out from the general public, or one who engages in a public enterprise or course of conduct whereby he seeks to influence public opinion. Now, a public figure may not recover damages for defamatory falsehood relating to his conduct in connection with the activities which have made him a public figure, unless he proves that the statement or statements were made with actual malice; that is, with the knowledge that it was false or made with a reckless disregard of whether it was false or not. If you should find from the greater weight of the evidence that Mr. Maloney was, at the time of the events which have been involved here, a public figure, as I have defined it, he may recover only if you find that any defamatory statement made, was made by the defendants with actual malice against the plaintiff."
The thrust of appellants' objection to the above instruction is that it left the question of whether the plaintiff was a public figure for the jury to decide when the Supreme Court had decided, as a matter of law, that the plaintiff was a "public figure" in its opinion in the certiorari proceedings at 231 So.2d 824. The Supreme Court made the following statements regarding the status of the plaintiff:
"The record clearly shows that appellees acquired a small weekly newspaper in Apalachicola, Florida, and immediately started a news and editorial campaign against the Alfred I. duPont interests and its affiliates, St. Joe Paper Company and St. Joseph Telephone and Telegraph Company. Samples of the publications in the record demonstrate an attempt to harass and abuse the duPont interests, apparently for the purpose of convincing the public that these interests were some sort of evil influence in the community of Apalachicola and that it *635 would therefore not be a good place to live and do business.
* * * * * *
"There can be little doubt that Maloney entered the area and established the anti-duPont editorial policy of his Apalachicola Times, for the purpose of arousing public indignation against these interests, and by virtue of that made himself a public figure engaged in a public enterprise and for the purpose, among other things, of influencing public opinion. He became a part of the passing scene and therefore subject to fair comment... ."
Appellants contend that the Supreme Court's ruling on the "public figure" question became the law of the case, and therefore it was error to permit that question to be decided by the jury on retrial. We agree. Under the instruction as given, the jury was not required to find that plaintiff was a public figure. Indeed, as worded, the instruction enabled the jury to find that plaintiff was not a public figure, a finding which if made would run counter to the holding of the Supreme Court.
Insofar as the public figure question is concerned, the same facts were adduced on retrial as were before the Supreme Court when it made the decision that plaintiff was a "public figure". Thus, the jury was erroneously empowered to supersede the Supreme Court's ruling with respect to that issue. At this juncture, it is necessary to recognize that class of persons coming within the "public official" doctrine of the New York Times Co. v. Sullivan case, supra, has been broadened not only to include "public figures" in subsequent cases but has more recently been even further broadened so as to include a private individual about whom a defamatory falsehood has been uttered in a newscast about the individual's involvement in an event of public or general interest. See Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296.
In light of the expanded class of persons which the United States Supreme Court has permitted to be inadvertently defamed in the absence of actual malice in the interest of the dominant policy of fostering an unfettered exchange of opinion concerning public officials, public figures and individual involvement in events of public interest, there can be no doubt that the plaintiff in the case at bar falls within the ambit of the Sullivan rule as expanded by its progeny.
Having concluded, as we do, that the plaintiff is a public figure and that the jury should have been so instructed, the criticality of the trial court's failure to do so becomes apparent. Since the instruction as worded required the jury to find actual malice as a prerequisite to liability only if it found that plaintiff was a public figure, the jury could have found that plaintiff was not a public figure and therefore could have found for plaintiff without finding that actual malice existed. When viewed in this perspective, the prejudice to appellants which resulted from the failure to give the defendant's requested instruction on the "public figure" issue is inescapable. For this reason alone, the judgment reviewed herein must be reversed.
Further examination of the instruction as given to the jury indicates that the jury was not properly instructed as to the appropriate quantum of proof which is necessary to sustain a libel judgment in a public figure case. We hasten to add that the entire field of libel actions has recently undergone a significant change as to governing principles. Some of these changes have taken place subsequent to the trial in the case at bar. Accordingly, although we must apply new principles which have evolved during this appeal, we think it only fair to observe that in large measure the judgment now under review must be reversed by reason of changes in the law of libel occurring after the entry of the final judgment and, of course, of which the trial court was unaware.
*636 Reviewing the instruction as given to the jury, we note the following language: "If you should find from the greater weight of the evidence that ...". Such instruction as to the quantum of proof required is consistent with that normally utilized in a civil case. In Rosenbloom v. Metromedia, Inc. at 403 U.S. 55, at 91 S.Ct. 1825, at 29 L.Ed.2d 318, the court described the quantum of proof necessary to be as follows:
"... none of the proofs, considered either singly or cumulatively, satisfies the constitutional standard with the convincing clarity necessary to raise a jury question whether the defamatory falsehoods were broadcast with knowledge that they were false or with reckless disregard of whether they were false or not."
In St. Amant v. Thompson, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262, the court likewise held that actual malice in a libel case must be proved with "convincing clarity". In Bon Air Hotel, Inc. v. Time, Inc., 426 F.2d 858, 864, (C.A. 5th, 1970), the court stated the proper burden of proof in the following terms:
"In addition, the Court placed a heavy burden of proof on plaintiffs  actual malice must be proved with `convincing clarity'."
Clear and convincing evidence exceeds the usual standard or quantum of proof customarily invoked in civil cases usually described as a preponderance of evidence or, as did the trial court below in its instruction to the jury, by the greater weight of the evidence. Yet, it does not approach that degree of certainty understood to be inherent in the "beyond a reasonable doubt" standard used in criminal cases. See The Florida Bar v. Rayman, 238 So.2d 594 (Fla. 1970).
In instructing the jury that the plaintiff herein had the burden of proving his case by the lesser standard of proof, that is, by the greater weight of the evidence, the court permitted the jury to render a verdict on an impermissible constitutional standard of proof. A further point raised by appellants contends that the sufficiency of the evidence to support a jury verdict based on actual malice in a libel action was lacking. In determining the sufficiency of the evidence, our "duty is not limited to the elaboration of constitutional principles; we must also in proper cases review the evidence to make certain that those principles have been constitutionally applied". New York Times Co. v. Sullivan, 376 U.S. 254 at 285, 84 S.Ct. 710 at 728. Commenting on the necessity of reviewing the evidence, the court in Rosenbloom v. Metromedia, Inc., supra, stated at 403 U.S. 53, at 91 S.Ct. 1825, at 29 L.Ed.2d 318:
"`With that responsibility, we are compelled to examine for ourselves the statements in issue and the circumstances under which they were made to see whether or not they ... are of a character which the principles of the First Amendment, as adopted by the Due Process Clause of the Fourteenth Amendment, protect.' (footnote omitted)
"Clearly, then, this Court has an `obligation to test challenged judgments against the guarantees of the First and Fourteenth Amendments,' and in doing so `this Court cannot avoid making an independent constitutional judgment on the facts of the case.' Jacobellis v. Ohio, 378 U.S. 184, 190, 84 S.Ct. 1676, 1679, 12 L.Ed.2d 793, [799] (1964). The simple fact is that First Amendment questions of `constitutional fact' compel this Court's de novo review."
Actual malice in a libel action is more than a mere negligent error. The plaintiff must prove that the publication involved was deliberately falsified or published *637 recklessly despite the publisher's awareness of probable falsity. Investigatory failures alone were held insufficient to satisfy this standard. New York Times Co. v. Sullivan, 376 U.S. at 286-288, 292, 84 S.Ct. 710; and Garrison v. Louisiana, 379 U.S. 64, 73-75, 79, 85 S.Ct. 209, 13 L.Ed.2d 125. Garrison emphasizes that even ill will or intent to harm are not enough. There must be showing of an intent to harm "through falsehood". (379 U.S. at 73, 85 S.Ct. 209)
An examination of the allegedly defamatory statement made by appellant Gibson at the speech before the Rotary Club in Port St. Joe can only be made in light of the publications made by appellee via his newspaper publishing facilities. Appellee's publications which were admitted in evidence amount merely to an opinion by him that the business interests by whom appellant Gibson is employed are responsible for the area's economic ills. Appellee is entitled to that opinion under the freedom of speech protected by the First Amendment. On the other hand, the statements made by appellant Gibson likewise amount to no more than his opinion that appellee's attitude toward business interests are responsible for the area's economic ills. He is entitled to hold his opinion just as much as the appellee is. Gibson's statement that appellee is anti-business is not totally without proof in this record. Indeed, at least insofar as Gibson's employer and its affiliated interests are concerned, that fact appears with convincing clarity in appellee's editorials. That appellee published inaccurate statements about the duPont interests is likewise inescapable from this record. Gibson erroneously represented the statistics of telephone subscribers in Apalachicola when he stated that the number of subscribers in the Apalachicola exchange was reduced by 74 by not explaining at the same time that the telephone company had transferred those telephones from the Apalachicola exchange to the newly established telephone exchange across the bay at East Point. Thus, his statement was erroneous, inaccurate, and negligently made. But, its inaccuracy, etc., lies not in the representation that there was a reduction of 74 telephones in the Apalachicola exchange, because factually there was. Rather, the misrepresentation lay in what Gibson did not say, that is, that the 74 telephones were lost to Apalachicola because they were transferred to East Point. Boiled down to its essence then, if appellee was in any way libeled by appellant's references to the number of telephones lost, that libel rests upon what Gibson did not say rather than what he did say.
We cannot find, based on our independent analysis of the record, that the proofs considered either singularly or cumulatively satisfy the constitutional standard with the convincing clarity necessary to support a judgment that the defamatory statements about which appellee complained were published with knowledge that they were false or with reckless disregard of whether they were false or not. A finding of actual malice in a libel case coming within the purview of New York Times Co. v. Sullivan and its progeny cannot rest on whether a reasonably prudent man would have published or would have investigated before publishing the statement complained of. St. Amant v. Thompson, 390 U.S. at 731, 88 S.Ct. 1323. The continually evolving constitutional standards which measure one's right to comment upon matters of public interest and concern simply do not permit us to hold that what transpired during the continuing exchange of opinions of each other by the parties herein amounts to actionable libel.
Accordingly, the judgments appealed herein are reversed and the cause is remanded with directions to enter judgment in favor of the appellants.
JOHNSON, J., concurs.
*638 WIGGINTON, J., concurs in part, dissents in part.
WIGGINTON, Judge (concurring in part, dissenting in part).
I concur in that part of the able opinion authored by Judge Spector which holds that the trial court erred in submitting to the jury the issue of whether appellee was a public figure, thereby leaving to the jury's determination whether proof of actual malice was required of appellee in order to sustain his cause of action. Because of this error, I agree that the judgment should be set aside in order that a new trial under proper instructions to the jury may be had.
I cannot agree with the concluding portion of the majority opinion which holds as a matter of law that no jury question existed as to whether the alleged libelous statement made by appellant was made with actual malice. The speech made by appellant Gibson unequivocally charged appellee with having printed and published outright falsehoods against the Alfred I. DuPont Estate and its various interests including appellant, St. Joseph Telephone & Telegraph Company, for the purpose of venting his venom and displeasure and berating and abusing them. A statement charging any person with having published lies against another for the purpose of berating and abusing them is libelous per se from which actual malice may be implied. The act of appellant Gibson in having his speech printed and mailed to 6,000 of his telephone subscribers in the coverage area of appellee's newspaper is sufficient proof of actual malice to sustain the jury's verdict. The question of malice thus becomes one to be resolved by the jury in light of the explanation made by appellant as to his motives and intentions in making the statement and his proof of its truthfulness. The proof does not establish as a matter of law that appellant's charge against appellee was true, thereby absolving appellant from liability. I therefore cannot agree that the trial court should be directed to enter judgment in favor of appellants.