280 So.2d 461 (1973)
A.S. GRAD et al., Appellants,
v.
Paul R. COPELAND, Jr., Appellee.
No. 71-319.
District Court of Appeal of Florida, Fourth District.
June 22, 1973.
Rehearing Denied July 30, 1973.
*462 Thomas A. Hoadley of Howell, Kirby, Montgomery, D'Auito, Dean & Hallowes, West Palm Beach, for appellants.
Harry Lee Anstead, of Simpson & Anstead, West Palm Beach, for appellee.
PER CURIAM.
Upon careful consideration of the record, briefs and oral argument of counsel, we find that appellants have failed to demonstrate reversible error and the judgment appealed is therefore affirmed.
We have given particular attention to appellants' point concerning the correctness of certain jury instructions. There were multiple issues, involving different standards of proof, i.e., the libel action brought by plaintiff as a public official required clear and convincing evidence, whereas the issues of agency, malicious prosecution and damages required only proof by the greater weight of the evidence. The trial court carefully delineated these several issues and the proper standard of proof as to each and we are of the view that the court's instruction to the jury taken in its totality and in context with the particular issue then being addressed was a clear, concise and correct statement of the applicable law, and could not have been misleading to the jury.
The judgment is affirmed.
CROSS and OWEN, JJ., concur.
SALFI, D.J., Associate Judge, dissents with opinion.
SALFI, D.J., Associate Judge (dissenting):
I must respectfully dissent from the Majority opinion. That opinion has the effect of destroying the requirement for trial judges to state clearly and concisely, the disputed issues of fact and the basic rules to apply in resolving those disputes. I believe, without this kind of guidance the proceedings cannot result in an intelligent verdict. In fact, this principle is vital to a fair submission of a case to a jury.
In the instant case, the defendants appealed from a jury verdict and judgment in favor of plaintiff entered in a suit filed by plaintiff to recover damages sustained as a result of an alleged libelous letter.
Plaintiff was a Police Officer for the Town of Palm Springs, Florida and also maintained a part-time lawn maintenance business.
Defendant, Mr. Grad, a naturalized citizen, was a manager of an apartment building in the same town. On June 27, 1969, Mr. Grad sent a letter to the Chief of Police with copies to the City Commission, about a series of incidents that had occurred between Mr. Grad and the Plaintiff. This letter was written after consulting with an attorney who actually drew up the letter for Mr. Grad's signature.
*463 Briefly, the letter outlined a series of factual incidents, one of which involved the arrest of Mr. Grad by Officer Copeland as a result of a near accident between automobiles driven by Mr. Grad and Officer Copeland. The procedure followed in the arrest was somewhat unusual in that it involved the locking up of Mr. Grad, in the patrol car, and transporting him to the police station and then back to his car. This whole procedure involved approximately one and a half hours.
In the letter, Mr. Grad placed the cause of the arrest and the unusual arrest practice to an earlier refusal on his part to hire Officer Copeland to do the lawn maintenance at Mr. Grad's home, the apartment building.
The part of the letter that allegedly did the damage is set forth as follows:
"... I feel that this officer has made a concerted effort to intimidate me and my person. His actions are such that I would suggest he was looking for protection money or insurance money."
The letter concluded by only requesting an investigation and appropriate action.
The cause was submitted to the jury on the issues of libel and a counter claim by Mr. Grad against Officer Copeland for malicious prosecution. As noted, the jury found in favor of the plaintiff on the libel claim and against the defendant, Grad, on his malicious prosecution claim.
On this appeal, Mr. Grad contends, among others, that the trial judge erred in his instructions to the jury.
Although the Majority has given these instructions particular attention and have found them to be, "clear, concise and correct statement of the applicable law," I must agree with the appellant's position. In order to understand the confusion that the jury was presented with we must examine the instructions individually and as a whole.[1]
*464 The trial court gave the following three instructions to the jury, all on the elements of libel:
"... The issues for your determination on the claim of plaintiff, Paul R. Copeland, Jr., against defendants, A.S. Grad and Chateau Village, Inc., are whether A.S. Grad did with actual malice publish or cause to be published, defamatory statements in the letter of June 27, 1969, knowing such statements to be false or with a reckless disregard of whether they were true or false, and with the intent of injuring the person of Paul R. Copeland, Jr., against whom said *465 statements were directed, and whether at the time of A.S. Grad's making of such statements as contained in the letter of June 27, 1969, A.S. Grad was an agent of defendant, Chateau Village, Inc., and was acting within the scope of his employment." Emp. added.
The next instruction on the issues was a mandatory one and immediately followed the earlier instruction:
"You are instructed that the publication of any false or defamatory printing, writing, or recordation tending to expose a person to public hatred, contempt or ridicule to deprive him of the benefits of public confidence or social intercourse or to impeach the honesty, integrity or reputation of the party to which directed when maliciously made is libel and a wrong in law." Emp. added.
The final instruction on the issues also was a mandatory instruction and was separated from the two earlier instructions.
"... If, therefore, you believe that the article complained of or any part thereof was untrue and was uttered with actual malice as referring to the plaintiff and was libelous, it being admitted to have been published by the defendants, your verdict will be for the plaintiff." Emp. added.
Parties to a law suit have fundamental right to have a Court instruct a jury as to the law applicable to the case. Williams v. Sauls, 151 Fla. 270, 9 So.2d 369; Holdsworth v. Crews, Fla.App. 1961, 129 So.2d 153.
This right goes to the very heart of our jury system. It has been stated a number of times that the purpose of jury charges is to guide and control the jury in their deliberations so that they may arrive at a verdict which is fairly based on the law and facts of the case. Hattaway v. Florida Power & Light Company, Fla.App. 1961, 133 So.2d 101.
Today the law in all states requires the judge to instruct the jury. Even in the absence of statute or rule, the duty to do so without request is not only obvious and necessary but it is a power inherent in the Court.
This rule goes beyond a judge just giving requested jury instructions of the parties. It requires the Court to be solely responsible to charge a jury on the basic fundamental rules necessarily in issue. Holdsworth v. Crews, supra. Even where the instructions on the basic fundamental rules are not properly requested the Court must clear away the excess and erroneous verbiage and charge the jury on the correct law. West Coast Hospital Ass'n v. Florida National Bank of Jacksonville, 1958 Fla., 100 So.2d 807.
The only duty upon counsel for the parties is to make special requests if they deem the basic fundamental rules need further elucidation. Holdsworth v. Crews, supra.
The Supreme Court has recognized that even the approval of standard instruction would not relieve a trial judge of his responsibility under the law, to properly and correctly charge a jury. Standard Jury Instructions, 1967 Fla., 198 So.2d 319.
Although it has not been stated in so many words, it would be obvious that the "basic fundamental rules necessarily in issue," would include, among others, charges on: issues or elements of the cause of action; the standard proof as well as upon whom the burden rests; accurate definitions of all legal terms used in instructions; all defenses available to the cause of action that are properly in issue.
The instructions to a jury in a libel case have not been standardized in this State and as a result the practice of numerous jury requests that are contradictory, cumulative, and outdated were filed in this case by both parties. In some instances the plaintiff appears to have requested instructions that were also requested by the defendant and were subsequently given by the court. Now the defendant is calling them improper. This fact undoubtedly has *466 bothered the Majority and rightfully so for the doctrine of "invited error" is important in our Judicial appellate principles. However, I believe that the invited error principle must give way when it comes in direct conflict with the mandatory duty to instruct on the basic and fundamental rules necessarily in issue.
It is this judge's opinion that the right to have a jury instructed properly on the "basic and fundamental rules necessarily in issue," cannot be waived or abrogated because the party now complaining may have waived his objection at the charge conference. This type of defect goes to the very substance of the law suit and may even be raised for the first time on appeal. See Martinez v. Balbin, 76 So.2d 488 (Fla. 1954), and cases cited therein.
In the instant case the jury was given the three separate sets of criteria to follow in regards to the issues in this libel case. Each criteria was contradictory of the other. One instruction included such elements as;
1) a defamatory statement
2) actual malice
3) publication
4) knowing the statement is false or with a reckless disregard of truth or falsity
5) with intent to do injury to the plaintiff
[*] (Note No. 2 and No. 4 are legally identical)
On the other hand, a mandatory instruction described the elements as:
1) a false writing
2) publication
3) to expose, deprive or impeach the plaintiff
4) when maliciously done (just "malice", not "actual malice")
Finally, the jury was told in another mandatory instruction that if any part of the article was;
1) untrue
2) was "uttered" with actual malice
3) a verdict for the plaintiff was in order in that publication was admitted
(Totally omitting a finding that writing was defamatory)
Not only do these instructions conflict with one another but two of them violate the mandatory instruction rule.
"A mandatory instruction unequivocally tells the jury that if they find that a series of facts is true, they must render a verdict for a specific party, All the essentials to the party's right to a verdict must be included in such an instruction." McBride, the Art of Instructing the Jury. (1973 Supplement) p. 33 Emp. added.
Any instruction that directs a verdict for a specific party is harmful error if it fails to contain a single element that is necessary for a party to prevail and it cannot be corrected because somewhere else in the judge's charge the element was supplied.
Superimposed upon these conflicting elements, the jury was told in one place, that the burden that rested upon the plaintiff was, "convincing clarity," (so clear as to leave no substantial doubt in your mind to the contrary) and in another place, told that the plaintiff only need establish his case by the greater weight of the evidence. (The more persuasive and convincing force and effect of the entire evidence in the case.)
The Majority takes the position that different standards of proof were applicable to different issues and as such the Court properly placed the proper burden upon the proper issue.
*467 Let us examine what the jury was told. First, they were instructed on the standard of proof for actual malice:
"Expressed malice  proof of actual malice must be of convincing clarity in order to satisfy the constitutional standard of proof, and is a degree of proof somewhat higher than the ordinary preparedness of the evidence usually required in civil cases, although less than proof beyond or to the exclusion of every reasonable doubt as is required in criminal cases."
"Convincing clarity means that the evidence must be so clear as to leave no substantial doubt in your mind to the contrary."
Then later in the instructions the jury was told in regard to the standard of proof in proving the "truth of the alleged libel,"
"I instruct you that there can be no recovery in this case if you find from the greater weight of the evidence that the publication complained of was substantially true."
Finally, there were instructions on the burden and the standard of proof for the entire plaintiff's claim of libel.
"If the greater weight of the evidence does not support the claim of the plaintiff, Paul R. Copeland, Jr., then your verdict shall be for the defendants.
"If the greater weight of the evidence supports the claim of the plaintiff then your verdict should be for the plaintiff and against the defendant."
In the middle of the instructions for Malicious Prosecution the jury had defined for it the term, "greater weight of the evidence."
"Greater weight of the evidence means the more persuasive and convincing force and effect of the entire evidence in the case."
I cannot agree with the Majority that these instructions clearly, concisely, and correctly state the applicable law on the standard of proof and upon whom the burden rested. The instructions directly conflict on the standard to be applied upon the libel action brought by the plaintiff as a public official.
To further compound the problem, the instruction used the terms, "malice," "actual malice" and "express malice" interchangeably and without clear distinctions being made as to the legal meaning. These terms do mean different things and must be defined when they are used in jury charges.
As to the defense of truth, the jury was told in one place that if the publication was substantially true, there could be no recovery. In another place they were instructed that truth was only a good defense if the true statement was made, "with good motives."
Finally, the jury was told they could NOT take the meaning of the words as the party who wrote the letter contemplated. However, they were instructed to look to the meaning that, "was intended." (intended by whom?)
The confusion created by these instructions can be understood when one realizes the changes that have and are coming about in the area of defamation over the last eight years. The learned trial judge had his hands full trying to distill into everyday language, the basic fundamental rules of libel in a forty minute charge conference. Nevertheless, the obligation and duty to set out an understandable set of guidelines that a lay jury can intelligently understand and that are not conflicting or contradictory is absolutely essential to a fair verdict and the administration of justice.
"The purpose of final instructions is to outline the issues and the law of the case in such manner that the jury is not misled and to furnish such other guides as may be necessary to reach a verdict ... The disputed issues of fact *468 must be clearly outlined and the law necessary for each issue must be associated to the question to which it applies." McBride, the Art of Instructing the Jury, § 4.02, p. 134.
After reading the instructions given to the jury in this case several times, I do not understand what rules the trial judge wanted to apply to the evidence in this case. The Majority stated that the jury could not have been misled. With this I cannot agree.
"In instructing jurors we must assume that they have no knowledge of the rules of law and that, therefore, they must be instructed on all points of law which under any reasonable theory, might be involved in their deliberations, to the end that their decision will be according to the law and the evidence and untinged by any private and possible false opinion of the law that they may entertain." McBride, the Art of Instructing the Jury, § 1.10, p. 17.
Certain rules in defamation cases have been laid down by the Supreme Court of the United States and the District Courts in the State of Florida.
This suit for libel involved only four elements;[2] 1) a writing that is defamatory; 2) publication; 3) actual malice; 4) damage.
Truth is recognized as a defense whether or not with good motive. Garrison v. Louisiana, 1964, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125. On this point the Supreme Court of the United States in the Garrison case, supra, quoted with approval from an earlier case:
"If upon a lawful occasion for making a publication, he has published the truth, and no more, there is no sound principle which can make him liable, even if he was actuated by express malice ..."
"Debate on public issues will not be uninhibited if the speaker must run the risk that it will be proved in court that he spoke out of hatred; even if he did speak out of hatred, utterances honestly believed contribute to the free interchange of ideas and the ascertainment of truth." Garrison v. Louisiana, supra, p. 73, 85 S.Ct. p. 215, 13 L.Ed.2d, p. 132.
The burden of proof that must be carried by the plaintiff in a public official case must be with convincing clarity, which is a greater standard of proof than by the greater weight of the evidence. Gibson v. Maloney, Fla.App. 1972, 263 So.2d 632.
Convincing clarity is so certain and trustworthy that it convinces the jury that each essential element of the libel has been established. The Majority may be correct in its assumption that the burden is preponderance of the evidence as to the issue of damages as well as agency in a libel case, however, I want to point out that to date there is still a question in this area.
Actual malice is defined as the publishing party knowing the falsity or a showing that he acted in such a way as to demonstrate his reckless disregard for whether it was true or not. In other words, simply being negligent or even grossly negligent in failing to ascertain the falsity of something will not meet the test of actual malice. Garrison v. Louisiana, supra.
*469 There is a difference between the terms, actual malice and express malice. Express malice is something written or spoken out of hatred, ill will or contempt. One can have express malice without actual malice and vice versa. Also, you can have actual malice and express malice. Garrison v. Louisiana, supra. In the instant case there is no need for the element of "express malice" to maintain the action for libel except as it would effect the plaintiff's claim for a greater amount of punitive damages.
Finally, in the instant case, the term "malice" alone should not be used as it does not have a recognized legally acceptable definition in defamation suits involving public officials or figures.
Since you cannot have "actual malice" without a false statement or writing, it would appear that the burden of proving falsity would rest on the plaintiff, and therefore the so-called defense of truth would not be a legal defense that normally requires the defendant to carry the burden of proof. There is a need to have this area clearly delineated by standard instructions adapted by our Supreme Court.
It is always difficult for an appellate judge to reach a conclusion that will have the effect of vacating a jury verdict. It is especially difficult for this judge because of my deep-felt belief in the jury process. I do not find, in the instant case, that the jury cannot, from the evidence, find for the plaintiff. Nevertheless, I do find that the jury could not have possibly properly considered the evidence in light of the confusing rules that composed the jury charges.
Therefore, I cannot join with the Majority in this case and must find that the end of justice would best be served by resubmitting to the jury, under appropriate instructions, the issues in this case. Accordingly, I would reverse the judgment and remand the case for a new trial.
NOTES
[1] The parts of the jury charge that are essential to this appeal are reproduced here verbatim, omitting only those portions that do not relate to the points raised in this appeal.

"... The issues for your determination on the claim of plaintiff, Paul R. Copeland, Jr., against defendants A.S. Grad and Chateau Village, Inc., are whether A.S. Grad did with actual malice publish or cause to be published defamatory statements in the letter of June 27, 1969, knowing such statements to be false or with a reckless disregard of whether they were true or false, and with the intent of injuring the person of Paul R. Copeland, Jr. against whom said statements were directed, and whether at the time of A.S. Grad's making of such statements as contained in the letter of June 27, 1969, A.S. Grad was an agent of defendant, Chateau Village, Inc., and was acting within the scope of his employment.
"You are instructed that the publication of any false or defamatory printing, writing or recordation tending to expose a person to public hatred, contempt or ridicule to deprive him of the benefits of public confidence or social intercourse or to impeach the honesty, integrity, or reputation of the party to which directed when maliciously made is libel and a wrong in law.
"In determining the question as to whether the letter complained of was or was not libelous, you are to take the entire article into consideration and to give it that plain, ordinary, usual, natural interpretation which would be usually given to it by the general reader thereof.
"Neither the sense in which the plaintiff may have understood it nor the meaning which the defendant may have contemplated is to govern you in your determination. You are to look at it and regard it in the meaning it was intended.
"If, therefore, you believe that the article complained of or any part thereof was untrue and was uttered with actual malice as referring to the plaintiff and was libelous, it being admitted to have been published by the defendants, your verdict will be for the plaintiff.
"Public officials may sue for libel only when they can demonstrate the statement was made with actual malice, which is defined to mean only those false statements made with the high degree of awareness of their probable falsity.
"Malice is an essential ingredient of an actionable defamation. Without malice, no tort results from the publication of a defamatory statement concerning another, however untrue it may be.
"Expressed malice  proof of actual malice must be of convincing clarity in order to satisfy the constitutional standard of proof, and is a degree of proof somewhat higher than the ordinary preponderance of the evidence usually required in civil cases, although less than proof beyond and to the exclusion of every reasonable doubt as is required in criminal cases.
"Convincing clarity means that the evidence must be so clear as to leave no substantial doubt in your mind to the contrary.
"In order that there be actionable libel it must be published. That is, it must be made known to others by publication. Its communication to a third person is in law a publication. This makes it actionable if other elements of libel are present, and the extent of publication is material only insofar as it affects the amount of damages. Publication, of course, must be made by the person sought to be held actionable or his agent or agency.
"Publications dealing with public officers are entitled to a measurable privilege by reason of the public interest involved. Such persons are subject, it is said, to fair comment. The rule is extended to any person in the service of the governmen who derives his position from duly authorized election of appointment as a public officer. Policemen are public officers or public men within the meaning of the rule.
"Where a matter which otherwise would be qualifiedly privileged  would otherwise be a qualifiedly privileged communication is published falsely, fraudulently and with express malice and intent to injure the persons against whom it is directed, the communication loses its qualifiedly privileged character and the parties lay themselves liable to a suit for damages in an action of libel or slander.
"I instruct you that there can be no recovery in this case if you find from the greater weight of the evidence that the publication complained of was substantially true.
"Falsity is an essential element of libel. The falsity may consist of an untrue imputation as well as a direct statement. It follows that truth is a good defense to an action for libel, assuming that publication was made with good motives.
"The wrong having been established, liability extends to all the consequences that naturally and reasonably follow or result from it. Therefore one who is responsible for a libel is liable for the harm caused thereby to the reputation of the person defamed, or in the absence of proof of such harm, for the harm that normally results from such defamation.
* * * * *
[general damage]
* * * * *
[business or professional damages]
* * * * *
[agency]
* * * * *
"If the greater weight of the evidence does not support the claims of plaintiff, Paul R. Copeland, Jr., then your verdict shall be for the defendants.
"If the greater weight of the evidence supports the claims of the plaintiff, then your verdict should be for the plaintiff and against the defendants.
"In addition to the plaintiff's libel action, the defendant has filed a counterclaim for malicious prosecution.
* * * * *
[malicious prosecution]
"Greater weight of the evidence means the more persuasive and convincing force and effect of the entire evidence in the case.
* * * * *
[elements of compensatory damages-libel]
* * * * *
"There is another kind of damage which may be added to an award for compensatory damages in an action for libel, if you find that the evidence justifies it, and such is called exemplary or punitive damages.
"Punitive damages may be awarded in a case where actual malice is proven.
* * * * *
[punitive damage considerations]
* * * * *
[conclusionary instructions]"
[2] This is only true in cases involving, 1) public officials; 2) public figures; 3) private individual when said individual becomes involved in an event of public or general interest. See, New York Times Co. v. Sullivan, 1964, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686. Curtis Publishing Co. v. Butts, 1967, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094. Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296.