## ST. AMANT *v.* THOMPSON.

No. 517.   Argued April 4, 1968.—Decided April 29, 1968.

*Russell J. Schonekas* argued the cause and filed a brief for petitioner.

*Robert L. Kleinpeter* argued the cause and filed a brief for respondent.

MR. JUSTICE WHITE delivered the opinion of the Court.

The question presented by this case is whether the Louisiana Supreme Court, in sustaining a judgment for damages in a public official's defamation action, correctly interpreted and applied the rule of *New York Times Co. v. Sullivan,* 376 U. S. 254 (1964), that the plaintiff in such an action must prove that the defamatory publication "was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." 376 U. S., at 279–280.

On June 27, 1962, petitioner St. Amant, a candidate for public office, made a televised speech in Baton Rouge, Louisiana. In the course of this speech, St. Amant read a series of questions which he had put to J. D. Albin, a member of a Teamsters Union local, and Albin's answers to those questions. The exchange concerned the allegedly nefarious activities of E. G. Partin, the president of the local, and the alleged relationship between Partin and St. Amant's political opponent. One of Albin's answers concerned his efforts to prevent Partin from secreting union records; in this answer Albin referred to Herman A. Thompson, an East Baton Rouge Parish deputy sheriff and respondent here:

"Now, we knew that this safe was gonna be moved that night, but imagine our predicament, knowing

of Ed's connections with the Sheriff's office through Herman Thompson, who made recent visits to the Hall to see Ed. We also knew of money that had passed hands between Ed and Herman Thompson . . . from Ed to Herman. We also knew of his connections with State Trooper Lieutenant Joe Green. We knew we couldn't get any help from there and we didn't know how far that he was involved in the Sheriff's office or the State Police office through that, and it was out of the jurisdiction of the City Police." [1]

Thompson promptly brought suit for defamation, claiming that the publication had "impute[d] . . . gross misconduct" and "infer[red] conduct of the most nefarious nature." The case was tried prior to the decision in *New York Times Co.* v. *Sullivan, supra.* The trial judge ruled in Thompson's favor and awarded $5,000 in damages. Thereafter, in the course of entertaining and denying a motion for a new trial, the Court considered the ruling in *New York Times,* finding that rule no barrier to the judgment already entered. The Louisiana Court of Appeal reversed because the record failed to show that St. Amant had acted with actual malice, as required by *New York Times.* 184 So. 2d 314 (1966). The Supreme Court of Louisiana reversed the intermediate appellate court. 250 La. 405, 196 So. 2d 255 (1967). In its view, there was sufficient evidence that St. Amant recklessly disregarded whether the statements about Thompson were true or false. We granted a writ of certiorari. 389 U. S. 1033 (1968).

---

[1] St. Amant had preceded this question and answer with other answers by Albin asserting that Partin, on learning that a union member had written to the Secretary of Labor charging that Partin had been stealing union funds, had become "pretty riled up" and had decided to "get rid of the safe" containing the union records.

For purposes of this case we accept the determinations of the Louisiana courts that the material published by St. Amant charged Thompson with criminal conduct, that the charge was false, and that Thompson was a public official [2] and so had the burden of proving that the false statements about Thompson were made with actual malice as defined in *New York Times Co.* v. *Sullivan* and later cases. We cannot, however, agree with either the Supreme Court of Louisiana or the trial court that Thompson sustained this burden.

Purporting to apply the *New York Times* malice standard, the Louisiana Supreme Court ruled that St. Amant had broadcast false information about Thompson recklessly, though not knowingly. Several reasons were given for this conclusion. St. Amant had no personal knowledge of Thompson's activities; he relied solely on Albin's affidavit although the record was silent as to Albin's reputation for veracity; he failed to verify the information with those in the union office who might have known the facts; he gave no consideration to whether or not the statements defamed Thompson and went ahead heedless of the consequences; and he mistakenly believed he had no responsibility for the broadcast because he was merely quoting Albin's words.

These considerations fall short of proving St. Amant's reckless disregard for the accuracy of his statements about Thompson. "Reckless disregard," it is true, cannot be fully encompassed in one infallible definition. Inevitably its outer limits will be marked out through case-by-case adjudication, as is true with so many legal stand-

---

[2] The Louisiana Supreme Court concluded, after considering state law, that a deputy sheriff has "substantial responsibility for or control over the conduct of governmental affairs," the test established by *Rosenblatt* v. *Baer*, 383 U. S. 75, 85 (1966), "at least where law enforcement and police functions are concerned." 250 La., at 422, 196 So. 2d, at 261.

ards for judging concrete cases, whether the standard is provided by the Constitution, statutes, or case law. Our cases, however, have furnished meaningful guidance for the further definition of a reckless publication. In *New York Times, supra,* the plaintiff did not satisfy his burden because the record failed to show that the publisher was aware of the likelihood that he was circulating false information. In *Garrison* v. *Louisiana,* 379 U. S. 64 (1964), also decided before the decision of the Louisiana Supreme Court in this case, the opinion emphasized the necessity for a showing that a false publication was made with a "high degree of awareness of . . . probable falsity." 379 U. S., at 74. MR. JUSTICE HARLAN's opinion in *Curtis Publishing Co.* v. *Butts,* 388 U. S. 130, 153 (1967), stated that evidence of either deliberate falsification or reckless publication "despite the publisher's awareness of probable falsity" was essential to recovery by public officials in defamation actions. These cases are clear that reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.

It may be said that such a test puts a premium on ignorance, encourages the irresponsible publisher not to inquire, and permits the issue to be determined by the defendant's testimony that he published the statement in good faith and unaware of its probable falsity. Concededly the reckless disregard standard may permit recovery in fewer situations than would a rule that publishers must satisfy the standard of the reasonable man or the prudent publisher. But *New York Times* and succeeding cases have emphasized that the stake of the

people in public business and the conduct of public officials is so great that neither the defense of truth nor the standard of ordinary care would protect against self-censorship and thus adequately implement First Amendment policies. Neither lies nor false communications serve the ends of the First Amendment, and no one suggests their desirability or further proliferation. But to insure the ascertainment and publication of the truth about public affairs, it is essential that the First Amendment protect some erroneous publications as well as true ones. We adhere to this view and to the line which our cases have drawn between false communications which are protected and those which are not.

The defendant in a defamation action brought by a public official cannot, however, automatically insure a favorable verdict by testifying that he published with a belief that the statements were true. The finder of fact must determine whether the publication was indeed made in good faith. Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call. Nor will they be likely to prevail when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation. Likewise, recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports.[3]

By no proper test of reckless disregard was St. Amant's broadcast a reckless publication about a public officer. Nothing referred to by the Louisiana courts indicates an awareness by St. Amant of the probable falsity of Albin's

---

[3] See, e. g., Curtis Publishing Co. v. Butts, 388 U. S. 130, 169–170 (WARREN, C. J., concurring in the result), and 172 (BRENNAN, J., dissenting) (1967).

statement about Thompson. Failure to investigate does not in itself establish bad faith. *New York Times Co.* v. *Sullivan, supra,* at 287–288. St. Amant's mistake about his probable legal liability does not evidence a doubtful mind on his part. That he failed to realize the import of what he broadcast—and was thus "heedless" of the consequences for Thompson—is similarly colorless. Closer to the mark are considerations of Albin's reliability. However, the most the state court could say was that there was no evidence in the record of Albin's reputation for veracity, and this fact merely underlines the failure of Thompson's evidence to demonstrate a low community assessment of Albin's trustworthiness or unsatisfactory experience with him by St. Amant.

Other facts in this record support our view. St. Amant made his broadcast in June 1962. He had known Albin since October 1961, when he first met with members of the dissident Teamsters faction. St. Amant testified that he had verified other aspects of Albin's information and that he had affidavits from others. Moreover Albin swore to his answers, first in writing and later in the presence of newsmen. According to Albin, he was prepared to substantiate his charges. St. Amant knew that Albin was engaged in an internal struggle in the union; Albin seemed to St. Amant to be placing himself in personal danger by publicly airing the details of the dispute.

Because the state court misunderstood and misapplied the actual malice standard which must be observed in a public official's defamation action, the judgment is reversed and the case remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE BLACK and MR. JUSTICE DOUGLAS concur in the judgment of the Court for the reasons set out in

their concurring opinions in *New York Times Co.* v. *Sullivan,* 376 U. S. 254, 293 (1964), and *Garrison* v. *Louisiana,* 379 U. S. 64, 79, 80 (1964).

MR. JUSTICE FORTAS, dissenting.

I do not believe that petitioner satisfied the minimal standards of care specified by *New York Times Co.* v. *Sullivan,* 376 U. S. 254 (1964). The affidavit that petitioner broadcast contained a seriously libelous statement directed against respondent. Respondent was a public official. He was not petitioner's adversary in the political contest. Petitioner's casual, careless, callous use of the libel cannot be rationalized as resulting from the heat of a campaign. Under *New York Times,* this libel was broadcast by petitioner with "actual malice"—with reckless disregard of whether it was false or not. The principle of *Curtis Publishing Co.* v. *Butts,* 388 U. S. 130 (1967), in my opinion, should lead us to affirmance here.

The First Amendment is not so fragile that it requires us to immunize this kind of reckless, destructive invasion of the life, even of public officials, heedless of their interests and sensitivities. The First Amendment is not a shelter for the character assassinator, whether his action is heedless and reckless or deliberate. The First Amendment does not require that we license shotgun attacks on public officials in virtually unlimited open season. The occupation of public officeholder does not forfeit one's membership in the human race. The public official should be subject to severe scrutiny and to free and open criticism. But if he is needlessly, heedlessly, falsely accused of crime, he should have a remedy in law. *New York Times* does not preclude this minimal standard of civilized living.

Petitioner had a duty here to check the reliability of the libelous statement about respondent. If he had made a good-faith check, I would agree that he should be pro-

tected even if the statement were false, because the interest of public officials in their reputation must endure this degree of assault. But since he made no check, I agree with the Supreme Court of Louisiana that *New York Times* does not prohibit recovery.

I would affirm.