420 So.2d 1247 (1982)
Alton "Tan" ROMERO, Plaintiff and Appellant,
v.
ABBEVILLE BROADCASTING SERVICE, INC., Defendant and Appellee.
No. 82-116.
Court of Appeal of Louisiana, Third Circuit.
October 13, 1982.
*1248 Thompson, Sellers & Bundick, Dennis Bundick, Abbeville, for plaintiff-appellant.
Broussard, Broussard & Moresi, Marcus A. Broussard, Jr., Abbeville, for defendant-appellee.
Before CULPEPPER, GUIDRY and LABORDE, JJ.
CULPEPPER, Judge.
This is a defamation suit. Plaintiff is Alton "Tan" Romero, a deputy sheriff of Vermilion Parish. Defendant, Abbeville Broadcasting Service, Inc., is the owner of a radio station. The trial court held the plaintiff was a public figure and/or public official, and therefore the defendant must have been guilty of "actual malice." The court then found as a fact that no actual malice by the radio station was proven. From a judgment dismissing his suit, plaintiff appealed.
The evidence shows that on December 9, 1979 and December 10, 1979, radio station KROF in Abbeville, Louisiana, owned by Abbeville Broadcasting Service, Inc., broadcast statements in its news reports that the petitioner had been arrested, handcuffed and taken to jail by FBI agents on charges of vote buying arising out of the December 8, 1979 election for sheriff of Vermilion Parish. Herschel Reaux was in a run-off against the incumbent sheriff, Euda Delcambre. The plaintiff was the deputy sheriff and jailer for Vermilion Parish and was an active supporter of the incumbent. It was a hotly contested and close election in which accusations were made by both sides.
The trial court found as a fact that there were broadcasts concerning the plaintiffs' arrest by FBI agents on both Sunday, December 9, 1979, the day after the election, and the following Monday, December 10, 1979.
The defendant broadcasting company introduced into evidence what it considered to be an exact transcript of the broadcast in question, including an interview by Dave Milner, the news director for channel KROF, with Herschel Reaux, the defeated candidate, as follows:
By Mr. Milner:
"Voting irregularities have been charged in Saturday's Sheriff's election by candidate Herschel Reaux, who lost to Sheriff Euda Delcambre by a close margin. Reaux says his people observed the voting irregularities and asked state and parish officials for help, and received none. Did you have any of your people, ah, you know, kind of observing at various precincts around the parish?"
By Mr. Reaux:
"Oh yea. Yea, we had some all over."
By Mr. Milner:
"And this is how you found out about it, or ..."
By Mr. Reaux:
"Well, you could see them, you know. We tried to get the FBI out here, and we, we called the Attorney General, and they gave us all the run around and everything. When the Governor and the District Attorney and the Representative *1249 and the Senator and everybody else is against you, it's hell to get anything done, you know."
By Mr. Milner"
"Reaux says one of Sheriff Delcambre's Deputies, Alton "Tan" Romero, has been picked up by the FBI for alleged vote buying."
By Mr. Reaux:
"The FBI did pick up Tan Romero and handcuffed him and brought him to jail, and then they bonded him out."
By Mr. Milner:
"Reaux says he will contest the election due to voting irregularities throughout the parish in the Sheriff's race."
Actually, plaintiff had not been arrested by the FBI or any other authority for vote buying or any other offense. Thus, the broadcast statement was false in this respect.
Witnesses for the plaintiff did not remember whether or not the allegations that the plaintiff had been arrested for voting irregularities by FBI agents were made directly by the news director or by Reaux in the taped interview. We find the content of the broadcast was essentially as quoted above.
The plaintiff had been a deputy sheriff in Vermilion Parish for many years. He was actively involved in supporting the incumbent sheriff in the election. He testified he not only gave financial support to the campaign but also conducted a barbecue on the day of the election in order to encourage donations and to feed both the haulers and the voters whom they hauled to the polls. The court found as a fact that the sheriff's race was hotly contested and that the plaintiff actively engaged in this event of high public concern. Additionally, the trial court noted that the plaintiff had run for public office on three prior occasions including unsuccessful candidacies for state representative, sheriff, and police chief of Kaplan. Based on his active engagements in these events of public concern, as well as his position as deputy sheriff, the trial court held that the plaintiff was either a public official or a public figure for purposes of fixing the burden of proof in this case. We agree.
In New York Times v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), the U.S. Supreme Court held that in cases of defamation involving a public official actual malice or reckless disregard for the truth must be proven by the plaintiff. In Curtis Publishing Company v. Butts, 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), the Supreme Court extended this extra burden to those cases involving public figures, which they define as "non-public persons who are nevertheless intimately involved in the resolution of important public questions or, by reason of their fame, shaped events and areas of concern to society at large." In Gertz v. Robert Welch, Inc., 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the Supreme Court discusses who is a public figure. The court states:
"That designation (public figure) may rest on either of two alternative bases. In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts. More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues. In either case such persons assume special prominence in the resolution of public questions."
The court goes on to note that in order to determine whether or not an individual is a public figure, one must look to "the nature and extent of an individual's participation in the particular controversy giving rise to the defamation."
In the instant case the plaintiff, Alton "Tan" Romero, voluntarily injected himself into the public controversy of a hotly contested election, and he assumed a special prominence in the resolution of this public issue. Additionally, the defamation alleged arose out of his participation in the election controversy.
The Louisiana Supreme Court in Thompson v. St. Amant, 196 So.2d 255, 250 La. 405 *1250 (1967) held that a deputy sheriff is a representative of the sheriff in his official capacity and is a "public officer" or public official whose authority and duty is regulated by law and so far as the public is concerned the acts of the deputy are acts of the sheriff himself. The Thompson case involved a set of facts similar to the case at bar. The sheriff of East Baton Rouge Parish filed suit against Phil St. Amant, a candidate for the office of United States Senator, who appeared on a television program in Baton Rouge and delivered a political campaign address which alleged that illegal contributions had been made to his opponent by local unions through the plaintiff deputy sheriff, who himself was not a candidate. The Supreme Court held that the deputy sheriff was a state officer whose position was created by the legislature and was a public official. The court found that the deputy sheriff had "substantial responsibilities for or control over the context of governmental affairs." Therefore, the Supreme Court in the Thompson case applied the New York Times rule that actual malice must be proved.
We conclude plaintiff was a public officer and/or a public figure for purposes of fixing the burden of proof. Therefore, plaintiff's burden was to prove defendant was guilty of actual malice or reckless disregard of the truth.
The trial court found as a fact that the publication was not made with reckless disregard of the truth nor with actual malice. We agree. Plaintiff's principal argument is that the broadcasting company failed to thoroughly investigate Reaux's accusations. The Supreme Court in Gertz v. Robert Welsh, Inc., cited above, 94 S.Ct. at page 3003 stated:
"Mere proof of the failure to investigate, without more, cannot establish reckless disregard for the truth. Rather, the publisher must act with a high degree of awareness of probable falsity."
The Supreme Court in Gertz relies on the holding of St. Amant v. Thompson, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 in which the court upheld the Louisiana Supreme Court.
An additional factor considered is the defamatory statements themselves were not made by the broadcasting company, but by the opposing candidate. The news broadcaster did not state as a fact that Romero had been arrested. Instead, the news broadcast was that allegations had been made by Herschel Reaux that the plaintiff had been arrested. Indeed, the news broadcast contained the actual voice of Reaux himself making these allegations. The news broadcast was not an independent report of the episode as fact but was a report of an accusation the opposing party had made.
The Supreme Court case of Time, Inc. v. Pape, 401 U.S. 279, 91 S.Ct. 633, 28 L.Ed.2d 45 (1971) involved a similar factor. In that case, Time Magazine quoted what the Civil Rights Commission report had stated about police brutality and the Commission's specific allegations against the chief of detectives. The magazine failed to use the word "alleged" or "allegations." The plaintiff argued that because of this failure to use these words the magazine endorsed what the Civil Rights Commission was quoted as reporting. After a long discussion about the context of the article, the Supreme Court held that failure to use the word "alleged" was not sufficient to create a jury issue of whether or not malice was present. The Supreme Court upheld the lower court's dismissal of the plaintiff's case.
At least one Federal Court has held the broadcasting company or publisher cannot be held liable, absent a showing of actual knowledge of the falsity of statements, when publishing or broadcasting newsworthy statements of a third party, provided the reportage is fair and neutral. Edwards v. National Audubon Society, 556 F.2d 113 (2d Cir.1977), certiorari refused by the U.S. Supreme Court. This so-called "neutral reportage" rule has been rejected by other courts. We find it unnecessary to apply the rule here, because, for the reasons stated above, the defendant did not recklessly disregard the truth.
*1251 For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff-appellant.
AFFIRMED.