**William W. LEMMER, Plaintiff,**

v.

**ARKANSAS GAZETTE COMPANY and Nancy A. Miller, Defendants.**

**No. LR–C–83–777.**

United States District Court,
E.D. Arkansas, W.D.

Oct. 25, 1985.

Mark Lesher and Kathryn E. Laws, Texarkana, Tex., for plaintiff.

Phillip Carroll, Little Rock, Ark., for Arkansas Gazette.

Matthew T. Horan, Fayetteville, Ark., for Nancy A. Miller.

## MEMORANDUM OPINION AND ORDER

GEORGE HOWARD, Jr., District Judge.

Currently pending before the Court are motions of defendants, Arkansas Gazette Company and Nancy A. Miller, for summary judgment contending that there is no genuine issue as to any material fact in this proceeding and that defendants are entitled to judgment as a matter of law.

## RELEVANT BACKGROUND INFORMATION

This is a libel case brought by plaintiff, William W. Lemmer, against defendants alleging that he was defamed in an article published by the Arkansas Gazette Company on April 27, 1983. The article, entitled *"F.B.I. Can Spy On Us Again"*, was authored by Nancy Miller. The article protested alleged spying on dissident organizations by the F.B.I. and stated that Lemmer had played a major role in crushing the Vietnam Veterans Against the War in the early 1970's by the FBI.

Lemmer alleges in his complaint that the article contained "libelous, false, malicious and defamatory matters concerning the plaintiff ... [that] the authorship and publication of the article ... were reckless, willful, malicious and in complete disregard of the rights of plaintiff without any proper and sufficient investigation."

The relevant portions of the article which are purportedly libelous and false have been identified by Lemmer as:

A. Paragraph 2:

The FBI is authorized to spy on groups that pose no "immediate threat of harm" and those for which "there is not yet a reasonable indication of criminal activities." In short, the FBI may again spy on any of us.

B. Paragraph 3:

In the words of a "source" the FBI used here in Fayetteville in the early 1970s, instead of being "investigated" dissidents were being "monitored" and even "influenced".

C. Paragraph 5:

... VVAW was crushed in 1973 by FBI interference and false accusations. Lemmer, a former member of VVAW, played a major role in both.

D. Paragraph 6:

... Although the VVAW's record was one of peaceful—and peacekeeping—activities, Lemmer portrayed the veterans as dangerous men, an image he helped create.

E. Paragraph 7:

SKILLED IN MANIPULATION

He was skilled in getting people talking about actions they would never consider by themselves. The first time I met him, he had me ready to defy Springdale police and almost wishing we were armed. ... Later I recorded Lemmer coaxing his interviewers to talk about killing police and offering to carry illegal weapons.

F. Paragraph 8:

I know for a fact that Lemmer lied to O'Connell. It is clear in one report that O'Connell at least suspected it. But O'Connell continued to use Lemmer. . . .

G. Paragraph 10:

With Lemmer, apparently, both money and jail inspired him to tell O'Connell anything he wanted to hear. Consequently, Lemmer became the "star witness" against seven VVAW leaders and a conscientious objector. . . . The case was so flimsy that ... the jury quickly returned a blanket acquittal.

H. Paragraph 12:

Other informers were similarly misguided and misused by their FBI controllers. Gary Thomas Rowe murdered a civil rights worker to indict the Ku Klux Klan.

The Arkansas Gazette Company argues, in support of its request for summary judgment, that Lemmer was a public figure for purposes relevant to this proceeding and cannot recover because the article was not published maliciously—that defendant acted with knowing or reckless disregard of the truth.[1]

I.

PUBLIC FIGURE

■ Defendants argue that Lemmer was "a public figure in connection with the activities which are described in the Nancy Miller article." In essence, defendants assert that if Lemmer is not a public figure for all purposes, he is, indeed, a limited public figure with respect to the Vietnam Veterans Against the War. If this is so, Lemmer can recover for the alleged defamation only by demonstrating that the article was published with *actual malice*. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

■ In *Gertz*, the Supreme Court recognized two classes of persons in the term "public figure." First, those individuals who "occupy positions of such pervasive power that they are deemed public figures for all purposes." To meet this standard, it must be demonstrated that such individuals possess "general fame or notoriety in the community and pervasive involvement in the affairs of society."

■ Second, those individuals who have "thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." These individuals are characterized as limited public figures.

In an effort to show that Lemmer was a public figure either for all purposes or a limited one, defendants have cited, among other things, the following:

1. Newspaper articles referring to Lemmer as an activist in the Fayetteville, Arkansas, area in the anti-war effort of Vietnam Veterans Against the War in 1972 and 1973.

2. An article published in Harper's magazine in December, 1972, disclosing

---

**1.** Both Miller and Arkansas Gazette Company raised affirmatively in their answers the defense of truth and constitutional privilege. These defenses were reasserted in defendants' "... short and concise statement of the material facts as to which [they] contend there is no genuine issue to be tried" as required under Local Rule 30 of this Court in connection with their request for summary judgment.

that Lemmer had served as an informer for the FBI.

3. That Lemmer testified as a Government witness in the "Gainesville 8" conspiracy trial in August, 1973, involving eight VVAW members accused of conspiring to riot at the 1972 Republican National Convention.

■ After carefully considering the contents of the record in this proceeding, including the news articles and clippings, the Court is persuaded that Lemmer was, if not a public figure for all purposes, indeed, as a matter of law, a public figure with reference to the limited issue of the Vietnam Veterans Against the War, and the activities described in the Nancy Miller article. The Court also holds that there was a public controversy with reference to the Vietnam Veterans Against the War and the activities described in the Nancy Miller article; and that the degree and extent of Lemmer's involvement in this public controversy overwhelmingly demonstrates that Lemmer voluntarily injected himself in this controversy. Accordingly, the Court holds that Lemmer must show actual malice on the part of defendants in the authorship and the publication of the April 27, 1983, article in order to recover from defendants.[2]

## II.

### ACTUAL MALICE

The Court of Appeals for the Eighth Circuit in *Cervantes v. Time, Inc.*, 464 F.2d 986 (8th Cir.1972), has stated in no uncertain terms that a litigant, such as Lemmer in this proceeding, has an obligation "to demonstrate with *convincing clarity* that the materials he alleges to be defamatory were published with *knowledge of their falsity or with reckless disregard for their truth*" in order to prevail in this action. (Emphasis added)

■ Moreover, the Supreme Court has also made it clear that the First and Fourteenth Amendments' security of speech and the press limit the interest of the state in compensating private individuals for injury to reputation or in the enforcement of state libel laws. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). This limitation precludes recovery where liability is not predicated on knowledge of falsity or reckless disregard for the truth, where as here, the plaintiff is a public figure.

In *Amant v. Thompson*, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968), the Supreme Court made the following observa-

---

**2.** It appears beyond dispute that the April 27, 1983, article is defamatory in nature.

Section 41–3459, Ark.Stat.Ann. (1977 Repl.) provides:

It shall be deemed slander to falsely use, utter or publish words which, in their common acceptation, shall amount to charge any person with having been guilty of any other crime or misdemeanor ... or to charge any person with having been guilty of any dishonest business or official conduct or transaction, the effect of which charge would be to injure the credit or business standing, or to bring into disrepute the good name or character of such person so slandered, and such words so spoken shall be actionable, and he, she, or they so falsely publishing, speaking or uttering the same shall be deemed guilty of slander,....

Art. 2 § 6 of the Arkansas Constitution provides:

The liberty of the press shall forever remain inviolate. The free communication of thoughts and opinions is one of the invaluable rights of man; and all persons may freely

write and publish their sentiments on all subjects, being responsible for the abuse of such right. In all criminal prosecutions for libel the truth may be given in evidence to the jury; and if it shall appear to the jury that the matter charged as libelous is true, and was published with good motives and for justifiable ends, the party charged shall be acquitted.

In this diversity action, defendants assert vigoriously, as an affirmative defense, the federal constitutional privilege articulated by the Supreme Court in *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) and discussed hereafter in Section II of this opinion. This federal rule appears to be more demanding than the standard of "truth" and "published with good motives and for justifiable ends" enunciated in Art. 2 § 6 of the Arkansas Constitution and, in addition, the federal rule fosters free speech and a press by requiring public officials and public figures to prove actual malice before recovering damages for defamatory criticism. *See, Gertz v. Robert Welch, Inc.*, 418 U.S. at 334, 94 S.Ct. at 3004.

tion relative to what is required to demonstrate *"reckless disregard"*:

> [R]eckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.

Upon close scrutiny of the record, the Court holds that Lemmer has failed to show with "convincing clarity" that Miller and Arkansas Gazette Company acted with knowing or reckless disregard of the truth. Lemmer has failed to present any credible evidence to support a finding that either defendant entertained any doubts about the truth of any part of the April 27, 1983, article; that the investigation conducted by defendants was inadequate or disclosed a reckless disregard for the truth, or from which this Court could reasonably discern the inherent improbability of the matters published.

On the other hand, defendants, in support of their motions for summary judgment, have submitted affidavits, numerous news clippings and articles regarding Lemmer's involvement with Vietnam Veterans Against the War, a synopsis of the subject matter covered during cross-examination of Lemmer during the "Gainesville 8" trial and depositions of Lemmer and Richard O'Connell, special agent with the FBI, to demonstrate that the research performed by defendants persuaded them that statements contained in the article were true. The inescapable conclusion is that the April 27, 1983, article was authored and published in good faith, without actual malice and on the basis of a very careful confirmation effort. Accordingly, the Court holds that defendants are entitled to a judgment as a matter of law and plaintiff's complaint is dismissed with prejudice.