269 N.J. Super. 370 (1994)
635 A.2d 575
TURF LAWNMOWER REPAIR, INC., A NEW JERSEY CORPORATION, AND JOHN L. GLORIA, PLAINTIFFS-APPELLANTS,
v.
BERGEN RECORD CORPORATION, DAVID HALL, BYRON CAMPBELL, BRUCE LOCKLIN, MARY ANNE DEMARCO AND EDWARD MITCHELL, D/B/A EDDIE'S POWER EQUIPMENT,[*] DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 21, 1993.
Decided January 3, 1994.
*371 Before Judges MICHELS, KESTIN and WEFING.
Richard E. Brennan argued the cause for appellants (Shanley & Fisher, attorneys; Mr. Brennan and Joseph M. Cerra, on the brief).
*372 Peter G. Banta argued the cause for respondents (Winne, Banta, Rizzi, Hetherington & Basralian, attorneys; Mr. Banta, of counsel; Donald A. Klein and Peter F. Weiss, on the brief).
The opinion of the court was delivered by KESTIN, J.A.D.
In this defamation action, the trial court granted defendants' motion for summary judgment, holding that plaintiffs had failed "to raise a genuine issue of actual malice." Plaintiffs appeal. We affirm.
Defendant newspaper, the Bergen Record Corporation, published an article authored by defendant Locklin which depicted in an unfavorable and allegedly false light the services rendered by plaintiff corporation (Turf) to its customers and the manner in which its president and owner, plaintiff Gloria, ran the business. The article and accompanying material entitled "A Clip Joint for Lawn Mowers," was the product of investigative reporting by Locklin and a research assistant employed by the newspaper, defendant De Marco. Plaintiffs contend that the impetus for the investigation and resulting publication was personal pique on the part of Locklin when, as a customer of Turf, he was displeased both with the treatment he was accorded by employees of Turf and with their advice that his lawnmower was not worth repairing. Locklin's investigation included some tests intended to establish the manner in which Turf and a number of other lawnmower repair companies dealt with various lawnmower performance problems; undisclosed tape recordings of some conversations with Turf employees during tests; and interviews with the Better Business Bureau, local competitors of Turf, other lawnmower repair operators who did not compete with Turf, former Turf employees, customers of Turf, and with Gloria himself. Plaintiffs allege, inter alia, that Locklin's tests were improperly conducted and falsely reported, that he knowingly relied on biased sources, that he intentionally omitted information favorable to plaintiffs, and that specified statements in the article were false.
*373 Two of the issues that plaintiffs advance on appeal are interconnected. Plaintiffs contend that the trial court erred in applying a heightened proof standard in respect of their claim for compensatory damages. In this regard, they argue that the newspaper article for which defendants are responsible did not concern matters of legitimate public interest and that neither Gloria nor Turf was a public official or a public figure. The related issue advanced by plaintiffs is that their proofs, in respect of their claim for compensatory damages, are more than sufficient to establish defendants' negligence and knowledge of falsity. In addition, plaintiffs seek punitive damages and argue that their proofs will satisfy a heightened standard in this regard.
In Gertz v. Welch, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), the United States Supreme Court held that the "actual malice" standard articulated in New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), to govern defamation actions, applies only to public officials and public figures, not to private individuals.
[S]o long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual.
[Gertz v. Welch, supra, 418 U.S. at 347, 94 S.Ct. at 3010, 41 L.Ed.2d at 809.]
The Supreme Court of New Jersey defined and applied our common law standard governing defamation actions by private plaintiffs in Dairy Stores, Inc. v. Sentinel Publishing Co., 104 N.J. 125, 516 A.2d 220 (1986), and Sisler v. Gannett Co., 104 N.J. 256, 516 A.2d 1083 (1986), both decided on the same day. For reasons having to do with the character of each plaintiff's activities and the degree to which that conduct implicated matters of "legitimate public concern" the Supreme Court held the actual malice standard to apply in the instances presented in both cases. Dairy Stores and Sisler also demonstrate the method by which the governing proof standard is to be selected, and they refer to some of the permissible choices.
The statuses of the corporate and individual plaintiffs in this case are similar to those of the corporate and individual plaintiffs *374 in Dairy Stores and Sisler respectively. They are clearly private persons who have been subjected to general public notice by the very conduct which they allege gives rise to their cause of action. See also Gertz v. Welch, supra, 418 U.S. at 351-52, 94 S.Ct. at 3012-13, 41 L.Ed.2d at 811-13.
There are qualitative differences between these plaintiffs and the plaintiffs in Dairy Stores and Sisler to be sure; but the differences and the manner in which they bear upon the needs of public discourse are not so substantial as to require a variant result. We conclude, instead, that the plaintiffs in this case should be held to the heightened proof standard that "actual malice" connotes.
One of the differences is that the alleged defamation to the corporate plaintiff in this case concerns a service rather than a product, bottled drinking water, as in Dairy Stores. That difference, however, provides no valid basis for distinguishing this case from Dairy Stores. We can perceive no principled basis for evaluating the legitimacy of the public interest in commercial activities differently because a service is involved rather than a product. Nor is the importance of the product or service as relating to "an essential of human life," Dairy Stores, supra, 104 N.J. at 145, 516 A.2d 220, the only permissible basis for concluding that a matter of legitimate public concern is implicated. The Supreme Court, in initially defining our common law standard, decided Dairy Stores on that narrow basis, viewing "drinking water [as] a paradigm of legitimate public concern" because of its essential nature and because the State had for some time "regulated the sale of bottled drinking water, and anyone engaged in the business of bottling and selling drinking water must be licensed by and comply with regulations of the Department of Health." Ibid. While employing that narrow basis of decision, the Supreme Court left "to the future a more complete definition of matters of legitimate public concern." Ibid.
We also do not understand the listing in Dairy Stores of then "developed criteria [in other jurisdictions] for determining whether *375 the activities and products of corporations constitute matters of public interest" to limit our consideration in this case. The fundamental test that governs was succinctly stated by the Supreme Court in both Dairy Stores and Sisler.
We recognize that not everything that is newsworthy is a matter of legitimate public concern.... [T]he assessment of public interest includes a determination whether the person "voluntarily and knowingly engaged in conduct that one in his position should reasonably know would implicate a legitimate public interest, engendering the real possibility of public attention and scrutiny."
[Dairy Stores, supra, 104 N.J. at 144, 516 A.2d 220 (citing Sisler, supra, 104 N.J. at 274, 516 A.2d 1083).]
When the plaintiffs in this case undertook a business serving the general public, they had to understand that the members of that public would be interested in the quality of that service, the prices that were charged, the treatment accorded to customers, promptness in performance, and other factors bearing upon the character, cost and dependability of the service offered. It is clear, as well, that Gloria, as an enterprising merchant, wanted his business to grow as large as possible as quickly as possible. His interest was in serving as many customers as could be attracted to Turf, not in developing a service marketed as exclusive in character and limited in availability to a select clientele. Thus, we can accept as given that plaintiffs did not choose to put their light under a bushel. Rather, it was their manifest intention, common among persons in commerce, that information concerning their business and its reliability would travel, and that customers would be attracted through word of mouth as well as whatever advertising plaintiffs purchased. It was, in short, to plaintiffs' benefit and very much their purpose to engender "public attention." See Dairy Stores, supra, 104 N.J. at 144, 516 A.2d 220.
No person with such an intention could reasonably hope to derive the benefits that flow from public notice and, at the same time, rely on the law to provide shelter from any detrimental consequences, including the "scrutiny" referred to in Dairy Stores and Sisler. The "legitimate need" of consumers "to learn about the reputation of the business entities" with which they deal *376 cannot be gainsaid. Dairy Stores, supra, 104 N.J. at 151, 516 A.2d 220.
From that need emanates the right to publish information concerning the nature and quality of goods intended for human consumption, and the reputations of those who make, distribute, and sell those goods.

[Ibid.]
Because it is our view that, for this purpose, there are no differences between goods, on the one hand, and services, on the other, we hold that any person or business which opens itself to the general public thereby subjects itself to the scrutiny that naturally comes with the attention it seeks, and thus creates a subject of legitimate public interest. It follows by the rule of Dairy Stores, that the heightened proof standard of actual malice devolves when the owners of the business seek to vindicate their interests in a defamation action.
In this regard, Gloria has no legitimate claim to the private person's protection also sought by the plaintiff in Sisler. Although it is clear that Gloria is not a public figure or official and that he is, therefore, protected by a broader zone of privacy than a public figure or official would be, the contents of defendants' article had nothing to do with those of Gloria's interests which are properly encompassed within his zone of privacy. The offending article in Sisler, notwithstanding that it dealt with the plaintiff's private interests and activities, was held not to qualify for a more ordinary, negligence focused, proof standard because the activities addressed implicated a highly regulated business, banking, and the plaintiff as a sophisticated banker and business person was presumed to understand the public's interest in his private banking transactions.
[W]hen a private person with sufficient experience, understanding and knowledge enters into a personal transaction or conducts his personal affairs in a manner that one in his position would reasonably expect implicates a legitimate public interest with an attendant risk of publicity, defamatory speech that focuses upon that public interest will not be actionable unless it has been published with actual malice.
[Sisler, supra, 104 N.J. at 279, 516 A.2d 1083.]
*377 Our decision in this case rests upon no such nuance. Every comment complained of in the offending article dealt with Gloria's activities in the business of plaintiff Turf, which we hold to be of legitimate public interest; or with his activities in politics, which are per se matters of legitimate public interest.
We agree substantially with the reasons articulated by Judge Marguerite Simon for her conclusion, given the posture of the case and its probable proofs as presented through the papers filed on the motion for summary judgment, that "a genuine issue of material fact that defendants published with actual malice" did not exist, i.e., that defendants published false and injurious statements with knowledge of their falsity or with reckless disregard for their truth or falsity. Dairy Stores, supra, 104 N.J. at 155-57, 516 A.2d 220. In order to succeed, plaintiffs must be prepared to show that defendants or any of them "entertained serious doubts about the truth" of the published material. Id. at 157-58, 516 A.2d 220; see also St. Amant v. Thompson, 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968). Nothing in the record before us creates a genuine issue of material fact when measured by the heightened proof standard in the light of the need for a "state of mind" showing. Dairy Stores, supra, 104 N.J. at 156-57, 516 A.2d 220; see also Masson v. New Yorker Magazine, Inc., 501 U.S. ___, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991). Therefore, defendants' motion for summary judgment was properly granted.
Affirmed.
WEFING, J.S.C. (temporarily assigned) concurring.
Plaintiff Turf Lawn Mower Repair, Inc. (Turf) is a corporation wholly owned by plaintiff John L. Gloria (Gloria). Its business, the repair and sale of lawn mowers, was effectively destroyed following the publication of an article in the August 21, 1988 edition of the Bergen Record which bore the headline "A Clip Joint for Lawn Mowers," with the sub-heading "Tests, ex-workers reveal Teaneck shop deceives, overcharges." The article was written by defendant Bruce Locklin (Locklin), the Investigative *378 News Editor of the Bergen Record for the past twenty years. Turf and Gloria filed a complaint seeking damages for defamation, intentional interference with prospective business advantage and violations of N.J.S.A. 2C:41-1, et seq., the New Jersey Racketeer Influenced and Corrupt Organizations Act (RICO).
The parties engaged in extensive discovery and the plaintiffs have served an expert's report which delineates how, in the view of its author, the defendants' preparation and writing of this article failed to comply with journalistic standards for investigative reporting. Defendants have served their own expert's report which takes the contrary position.
Plaintiffs dismissed, without prejudice, their RICO claims, and the trial judge dismissed the remaining claims. Plaintiffs have appealed to this court from the dismissal of their defamation claims. They do not contest in this appeal the dismissal of their claim for interference with prospective business advantage. With regard to the defamation claims plaintiffs argue that the trial court erred in concluding that plaintiffs' claims should be dismissed. Plaintiffs contend that the business of Turf, i.e., the sale and repair of lawn mowers, is not a matter of legitimate public interest so as to invest defendants with a qualified privilege, and that, as a result, plaintiffs are not required to prove actual malice to prevail in a cause of action for defamation.
Analysis of defamation claims has long been complicated by the various meanings attributed to the term "malice." Justice Pollock has observed that the use of the word malice "adds nothing to the legal analysis of an allegedly defamatory statement, and it can become a pitfall in the underbrush of the common law." Dairy Stores, Inc. v. Sentinel Pub. Co., Inc., 104 N.J. 125, 151, 516 A.2d 220 (1986). He has further noted that the test for the existence of actual malice is "whether the defendant in fact entertained serious doubts as to the truth of his publication." Id. at 149, 516 A.2d 220 (quoting St. Amant v. Thompson, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262, 267 (1968)).
*379 The Supreme Court in Dairy Stores delineated those subjects which, as a matter of law, had been considered of legitimate public interest for purposes of analyzing claims of defamation involving statements made about corporations and their products. The significance of this threshold determination is that if the subject is deemed to be one of legitimate public interest, the speaker is invested with a qualified privilege. The Supreme Court included within this category "such essentials of life as food and water" and those products having a widespread effect. Dairy Stores, supra, 104 N.J. at 144, 516 A.2d 220. Some examples of the latter cited by the Supreme Court include possible causes of cancer, flammability of baby cribs, and possible cures for cancer and other widespread diseases such as arthritis. Ibid. The only other criterion contemplated by Dairy Stores to assist the determination of whether the activities and products of corporations may constitute a matter of legitimate public interest in the context of a claim for defamation, is the existence of substantial government regulation of business activities and products. Id. at 145, 516 A.2d 220. Indeed, the majority opinion in Dairy Stores specifically disagreed with the concurring opinion which would have extended the actual malice standard to any product. Id. at 146, 516 A.2d 220.
The trial judge here noted in her oral opinion that the plaintiffs had conceded before her that they were subject to this actual malice standard. Plaintiffs argue that the trial judge erred in making that statement, but I do not agree. The transcript of the argument on the defendants' motions for summary judgment is in excess of 160 pages. Nowhere within that argument do the plaintiffs dispute the applicability of the actual malice standard. Plaintiffs' briefs, filed in advance of the argument, may have contended that plaintiffs were not required to establish actual malice, but plaintiffs never urged that position to the judge below. The trial judge's entire approach to the argument presented below rested on the premise that these plaintiffs were required to establish malice to prevail. Plaintiffs never disputed that premise during the argument but consistently responded in terms of their ability to satisfy that standard. It is clear that at the oral *380 argument of the motions below, they had retreated from the position originally asserted in their briefs.
Since the determination of this matter at the trial level, plaintiffs have retained new counsel who argue vigorously that plaintiffs should not be subject to this standard. I do not consider it appropriate for plaintiffs to have conceded the applicability of the standard to the trial court, but now argue on appeal that the trial court erred in using that standard. I thus find it unnecessary to decide whether plaintiffs' business involving the sale and repair of lawn mowers is a matter of legitimate public interest.
I agree that on the record presented there is no reasonable prospect that the plaintiffs, having concluded discovery in this matter, will be able to establish that these defendants entertained serious doubts as to the truth of the publications, and I concur in the affirmance of the dismissal of plaintiffs' claims.
NOTES
[*] During the pendency of this appeal, plaintiffs filed a stipulation dismissing the appeal with prejudice as to defendant Edward Mitchell, d/b/a Eddie's Power Equipment.