SILBERMAN, Chief Judge.
Robert Sharkey, a former candidate for Bonita Springs Fire Commissioner, seeks review of an administrative order finding that Sharkey maliciously made false statements about his opposing candidate during the election campaign. Sharkey admits that he made the false statements but argues that the Administrative Law Judge (ALJ) erred in finding that he acted with actual malice. We agree and reverse.
The issue before the ALJ was whether Sharkey violated section 104.271(2), Florida Statutes (2009), by making false statements about an opposing candidate with actual malice. Sharkey admitted to making false statements about opposing candidate and incumbent Edward Fitzgerald, accusing him of wasting taxpayer money on boondoggles during his tenure on the Fire Commission. Those statements, which Sharkey disseminated by mass email, asserted that Fitzgerald spent taxpayer money to attend a three-week fire education class at Harvard University and an International Fire Prevention Seminar in Paris, France.
In his defense, Sharkey argued that he did not make the statements with actual malice. Sharkey claimed that he reasonably relied on information provided by Alex Grantt, an acquaintance who was a former Fire Commission liaison and current candidate for a different seat on the Fire Commission. Grantt told Sharkey that he learned about Fitzgerald’s boondoggles during his regular attendance at Fire Commission board meetings. In support of this argument, Sharkey testified and presented the corroborating testimony of Grantt. It turned out that Grantt had not been listening attentively enough at the board meetings when the trips to Harvard and Paris were discussed; his information was erroneous.
*939 The ALJ determined that the Florida Elections Commission proved that Shar-key violated section 104.271(2) by clear and convincing evidence. The ALJ made the following findings in support of its conclusion that the Elections Commission proved that Sharkey acted with actual malice, or reckless disregard for the truth:
25. Sharkey acted with reckless disregard when relying solely upon casual conversations with a person with whom he did not have a close relationship — he published an email to over 200 people excoriating his opponent. The allegations are of such a nature that any prudent person would have verified the facts prior to publication, especially if that person was a candidate in the midst of a political campaign.
On appeal, Sharkey argues that the ALJ erred in finding reckless disregard based upon evidence that “any prudent person would have verified the facts prior to publication” because the proper legal standard is subjective, as opposed to objective, and there is no duty to investigate arising from the seriousness of the allegations. We agree.
The Supreme Court has explained that “reckless conduct is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing.” St. Amant v. Thompson, 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968). Rather, “[tjhere must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.” Id. That said, a defendant would not be able to “automatically insure a favorable verdict by testifying that he published with a belief that the statements were true.” Id. at 732. Instead, the finder of fact should resolve the issue of whether the statements were made in good faith by evaluating the source of the allegations and the probability of their correctness. The court explained:
Professions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous telephone call. Nor will they be likely to prevail when the publisher’s allegations are so inherently improbable that only a reckless man would have put them in circulation. Likewise, recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports.

Id.

In this case, the ALJ as the finder of fact did not properly apply the pertinent legal standard in considering the evidence and determining whether Sharkey made the statements about Fitzgerald in good faith. Instead of focusing on whether Sharkey had serious doubts about the truth of the allegations, the ALJ focused on the seriousness of the allegations to determine that a reasonably prudent person would have investigated them before publishing. This was error. See id. at 733.
Often when trial courts apply an erroneous legal standard, this court reverses and remands for reconsideration under the proper standard. However, the question of whether the evidence supports a finding of actual malice is a question of law. Harte-Hanks Commc’ns, Inc. v. Connaughton, 491 U.S. 657, 685, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989). This court must review the full record to determine whether the statements and the context in which they were made support a finding of actual malice. Id. at 688, 109 S.Ct. 2678. And the ALJ’s credibility determinations on the issue will be upheld unless they are clearly erroneous. Id. Because the ALJ has already made its credibility determina *940 tions, we are in the same position to review the ALJ’s findings as if the ALJ applied the correct standard.
The facts surrounding Sharkey’s reliance on Grantt’s information are analogous to those in Palm Beach Newspapers, Inc. v. Early, 834 So.2d 50 (Fla. 4th DCA 1976). In Early, a newspaper had published, among other things, a series of articles accusing a school superintendent of nepotism based on the school system’s hiring of his wife. Id. at 53. The articles were based on information furnished by the school board chairman who had erroneously assumed the superintendent had recommended his wife for the position. The Fourth District concluded that this evidence did not support a finding of actual malice but was, “at the most, only proof of defendants’ failure to investigate, which without more, cannot establish reckless disregard for the truth.” Id.
The source of the information in Early, a school board chairman, is comparable to the source in this case, a former Fire Commission liaison and current candidate who regularly attended board meetings. Just as the school board chairman would have knowledge of the school’s hiring practices, Grantt would have knowledge of what was said at the board meetings. Moreover, the ALJ did not consider Grantt to be an unreliable source and did not dispute that Grantt was a regular attendee of Fire Commission board meetings. The substance of the information in Early is also comparable to the substance of the information in this case. Both cases involved facts that would have been known to people in the informants’ positions and were not inherently incredible. As with the evidence in Early, the evidence in this case supported only a failure to investigate, which does not equate to actual malice.
We note that there was some evidence in the record that suggested Sharkey entertained serious doubts as to the truth of the statements. That evidence came from the deposition testimony of Wayne Edsall, a fire commissioner who recollected informing Sharkey that he thought one of Grantt’s allegations was false before Shar-key sent the emails. If the ALJ had relied on this evidence in reaching its conclusion, it would have established actual malice. See, e.g., Harte-Hanks, 491 U.S. at 691, 109 S.Ct. 2678 (holding that evidence supported a finding of actual malice of a newspaper defendant based on the fact that several people had told the defendant the charges were not true and also the fact that the informant’s demeanor when providing the information raised “obvious doubts about her veracity”). However, Edsall’s testimony was plagued by recollection problems, and the ALJ determined that Edsall’s testimony regarding the timing of his conversation with Sharkey, which was contradicted by Sharkey’s testimony on the same issue, was not reliable. The ALJ concluded that it was “impossible to ascertain from the evidence whether Edsall and Sharkey had any meaningful or substantive conversations concerning the alleged Fitzgerald trips, and, if so, when such conversations may have occurred.” Thus, the ALJ did not rely on Edsall’s deposition testimony in coming to its decision. Because the ALJ’s findings on this point are not clearly erroneous, we will not disturb them on appeal. And we reverse because the remaining evidence did not support the ALJ’s finding that Sharkey acted with actual malice.
Reversed.
NORTHCUTT and CRENSHAW, JJ., Concur.