J. Odell ANDERS, Plaintiff,

v.

NEWSWEEK, INC., Defendant.

Civ. A. No. W87–0131(B).

United States District Court,
S.D. Mississippi, W.D.

Dec. 7, 1989.

See also 551 So.2d 212.

Pamela A. Ferrington, John E. Mulhearn, Jr., Natchez, Miss., for plaintiff.

Alex A. Alston, Jr., Terry K. Rushing, Jackson, Miss., Tina A. Ravitz, Newsweek, Inc., New York City, for defendant.

## MEMORANDUM OPINION AND ORDER

BARBOUR, Chief Judge.

This cause is before the Court on Motion of Defendant Newsweek, Inc. ("Newsweek") to reconsider the Memorandum Opinion and Order of the Court of August 11, 1989, wherein the Court denied the Motion of Newsweek for Summary Judgment and to Strike certain evidence. This is a defamation action brought by J. Odell Anders, a former Chancery Clerk of Adams County, Mississippi. Anders' action is based on a story in the August 10, 1987, issue of *Newsweek* magazine which he claims defamed him by at least implying that he was the subject of a federal investigation into corruption in Mississippi politics. Newsweek claims that there was neither defamation nor malice in its story and that it is entitled to judgment as a matter of law. The Court has reviewed the pleadings, briefs and evidence submitted by the parties and finds that Newsweek was afforded ample opportunity to present argument to the Court in support of its summary judgment motion and, in fact, presented its arguments on the issues to the Court in its Memorandum Brief in Support of its Motion for Summary Judgment and its Rebuttal Brief, and, additionally, in its Memorandum and Rebuttal Briefs in support of its separate simultaneously filed Motion to Strike. Further, Newsweek had the opportunity to present oral argument on July 28, 1989, at a telephone conference. In its

Motion to Reconsider, Newsweek contends that this Court committed error but has not brought to the Court's attention any new argument or late development. Accordingly, the Motion of Newsweek to Reconsider is denied.

Newsweek's Brief in Support of its Motion to Reconsider raises a question as to the proper role of the Court in deciding summary judgment issues in a defamation case. Under Mississippi law, a claim of defamation requires that the plaintiff establish: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Fulton v. Mississippi Publishers Corp.*, 498 So.2d 1215 (Miss.1986). Additionally, if the plaintiff is a public figure, or the defamation involves a matter of public concern, the level of proof must rise to that of "actual malice." *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *Ferguson v. Watkins*, 448 So.2d 271 (Miss.1984).

The threshold question is whether the publication at issue is defamatory. *See Ferguson v. Watkins*, 448 So.2d at 275. In the procedural life of a defamation suit the Court must determine whether the statement bears the meaning ascribed to it by the plaintiff and whether this meaning is defamatory. *Fulton*, 498 So.2d at 1216. In determining whether a statement is defamatory, Mississippi law recognizes the common law rule that:

> Any written or printed language which tends to injure one's reputation, and thereby expose him to public hatred, contempt or ridicule, degrade him in society, lessen him in public esteem or lower him in the confidence of the community is actionable per se.

*Id.* at 1217 (quoting *Ferguson v. Watkins*, 448 So.2d at 275).

In *Ferguson*, the Mississippi Supreme Court refined the common law rule to require that

(1) the words used must have been clearly directed at the plaintiff; and

(2) the defamation must be clear and unmistakable from the words themselves and not the product of innuendo, speculation or conjecture.

*Ferguson*, 448 So.2d at 275.

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) the United States Supreme Court explained the proper application of summary judgment to a suit involving defamation of a public figure. *Anderson* holds that "the clear and convincing standard of proof should be taken into account in ruling on summary judgment motions," but noted that that holding does not denigrate the role of the jury in making credibility determinations, in weighing the evidence, and in drawing legitimate inferences from the facts. "These are jury functions," the Court noted, "not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. The evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. "Neither," the Court stated, "do we suggest that the trial court should act other than with caution in granting summary judgment or that the trial court may not deny summary judgment in the case where there is reason to believe that the better course would be to proceed to a full trial." *Id.* The summary judgment inquiry of the trial judge is, in a defamation case, the same as any other case, that is, whether there is a genuine issue of material fact. Fed.R.Civ.P. 56(c). Said another way, the Court must ask whether the evidence presented is such that a jury applying the proper evidentiary standard could reasonably find for either the plaintiff or the defendant. Considering the rigorous requirements of Mississippi law for proving defamation, the Court believes that the following is a correct statement of the summary judgment standard to be applied in Mississippi defamation cases with regard to the issue of whether there has been a defamation in the first instance: could a reasonable jury properly instructed under a clear and convincing

evidentiary standard find that the language in question was (1) clearly directed toward the plaintiff and (2) clearly and unmistakably defamatory from the words themselves, without the jury having to rely upon innuendo, speculation or conjecture? The Court believes this standard properly preserves the duty of the court pursuant to rule 56 while incorporating the rigorous standards of Mississippi defamation law.

■ In this case, the Court finds that the article, considered in its entirety, could be found by the jury to be defamatory of the Plaintiff. The Plaintiff, Anders, is clearly cited as an example of the need for an "overdue statewide cleanup." The article accuses the Plaintiff of paying himself, his wife, and two daughters very handsomely out of "taxpayers' money," when under Mississippi law Chancery Clerks are on a fee system whereby all fees produced by an office belong to the clerk, not the taxpayers, and there are no nepotism laws prohibiting the hiring of family members. The jury could find from a fair reading of the article as a whole that it would cause a reasonable reader to hold the plaintiff in contempt. The jury could further find that the words are clearly directed toward the Plaintiff and that the language, if defamatory, is clear and unmistakable from the words themselves. The jury would not have to engage in speculation, innuendo or conjecture to read the article as saying that the Plaintiff is a corrupt local baron who freely spends taxpayer's money on his own and his family's salaries.

■ With regard to the issue of actual malice, the Plaintiff must prove that the defendant either had knowledge of the falsity of the publication or a reckless disregard as to truth or falsity. The Court recognizes that the standard is a subjective one. That is, in order to have been reckless, the Defendant must have, in fact, entertained serious doubts as to the truth of its publication. *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1967). Thus, the issue involved is one of the Defendant's subjective state of mind. A public figure plaintiff may prove the defendant's subjective

state of mind through an accumulation of circumstantial evidence, direct evidence often being difficult, if not impossible, to obtain. *Connaughton v. Harte Hanks Communications, Inc.*, 842 F.2d 825 (6th Cir.1988), *aff'd*, —— U.S. ——, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989). The question whether the evidence in the record in a defamation case is sufficient to support a finding of actual malice is a question of law. *Bose v. Consumer's Union of U.S., Inc.*, 466 U.S. 485, 510–11, 104 S.Ct. 1949, 1964–65, 80 L.Ed.2d 502 (1984). In affirming *Connaughton*, the United States Supreme Court noted that the meaning of the terms "actual malice" and "reckless disregard" are not readily captured in "one infallible definition." Rather, only through the course of case-by-case adjudication can we give content to these otherwise illusive constitutional standards. —— U.S. at ——, 109 S.Ct. at 2695 (quoting *Bose*, 466 U.S. at 503, 104 S.Ct. at 1961). It is clear however, as the Defendant points out, that failure to investigate before publishing, alone, is insufficient to satisfy the standard. *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 153, 87 S.Ct. 1975, 1990, 18 L.Ed.2d 1094 (1967). Rather, the Court must determine whether a reasonable finder of fact may be able to determine whether the publication was in fact made in good faith. *St. Amant*, 390 U.S. at 732, 88 S.Ct. at 1326. The *St. Amant* Court went on to state:

> [p]rofessions of good faith will be unlikely to prove persuasive, for example, where a story is fabricated by the defendant, is the product of his imagination, or is based wholly on an unverified anonymous phone call. Nor will they be likely to prevail when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation.

*Id.* Such subjective awareness of probably falsity may be found if there are obvious reasons to doubt the veracity of an informant or the accuracy of his reports. *Herbert v. Lando*, 441 U.S. 153, 156–57, 99 S.Ct. 1635, 1638–39, 60 L.Ed.2d 115 (1979). Additionally, while it is true that failure to investigate, by itself, cannot prove actual

malice, failure to investigate must be considered in conjunction with other direct and circumstantial evidence bearing on the issue of "actual malice."

In the case *sub judice* a jury could decide from the evidence, both direct and circumstantial, that Newsweek had no reasonable grounds to believe in the truth of the matter published, i.e., that the Plaintiff was in any way the subject of a "statewide cleanup," or paid himself and his family with taxpayers' money, or that he was in any way involved in any scandal or was the subject of any federal investigation.

Accordingly, the Court finds and holds that the Motion of the Defendant Newsweek to Reconsider is not well taken and the same is hereby denied.

SO ORDERED.