James Joseph HICKEY, Plaintiff,

v.

CAPITAL CITIES/ABC, INC.,
a New York corporation,
et al., Defendants.

Civ. No. 91–6173–JO.

United States District Court,
D. Oregon.

Jan. 13, 1992.

Andrew P. Ositis, Salem, Or., for plaintiff.

Charles F. Hinkle, Julianne Ross Davis, Stoel Rives Boley Jones & Grey, Portland, Or., for defendants.

OPINION

REDDEN, Chief Judge:

BACKGROUND

Plaintiff James Hickey filed this action for libel, assault and slander against defendants Capital Cites/ABC, Inc. and American Broadcasting Companies. Plaintiff alleges that in the July 13, 1990 telecast of its program "20/20," defendants defamed him. Among the statements made by 20/20, plaintiff protests the following as untrue and slanderous: (1) "more than 300 people in Central Oregon have complained that their pets were stolen and delivered to the Hickey's operation;" (2) plaintiff's neighbor and godmother stated that "there's no doubt in her mind that he's·... dealing in stolen pets;" (3) "other(s) charge that the Hickeys not only accept stolen pets, they actively encourage people to do the stealing for them;" (4) the program showed a photograph of a poster allegedly used by plaintiff to solicit persons to sell him animals, but the photo showed only the top half of the poster, the omission of the bottom half of the poster was false and defamatory as it implied that plaintiff solicited or permitted stolen pets to be brought to him; and finally, (5) the program referred to an existing "black market in stolen pets" which is characterized as "a low, repulsive crime" and "a rotten trade" and specifically named only the plaintiff as one actively involved in any aspect of the research animal business thereby accusing plaintiff of being involved in this "black market" engaging in "a low repulsive crime" and involved in a "rotten trade."

Defendants move for summary judgment asserting that the first four contentions are substantially true and as for the statements contained in the fifth contention, they are either not "of and concerning" plaintiff, substantially true, or protected expressions of opinion.

STANDARDS

1. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The materiality of a fact is determined by the substantive law on the issue. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir.1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Electrical*, 809 F.2d at 630.

### 2. Defamation

■ Where statements involve a matter of public concern, the first amendment imposes upon plaintiff the burden of proving that the statements were false, both at trial and in response to a summary judgment motion. *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776, 106 S.Ct. 1558, 1563, 89 L.Ed.2d 783 (1986).

■ Truth is a complete defense in a defamation case. *Bahr v. Statesman Journal*, 51 Or.App. 177, 180, 624 P.2d 664, rev. denied, 291 Or. 118, 631 P.2d 341 (1981). A factual statement need not be literally true in every detail in order to be protected from a defamation action; rather, it is sufficient if the statement is substantially true. *Bahr v. Ettinger*, 88 Or.

App. 419, 422, 745 P.2d 807 (1987). Where there is no dispute of the underlying facts, the question of whether a statement is substantially accurate is one of law for the court. *Ettinger*, 88 Or.App. at 422–23, 745 P.2d 807.

### DISCUSSION

■ Defendants categorize plaintiff's several allegations into three categories of statements. The first statement is whether it is substantially true that "more than 300 people in Central Oregon have complained that their pets were stolen and delivered to Hickey's operation."

Defendants support this statement with the affidavit of Gary Horton, a deputy sheriff in Linn County since 1971 (plaintiff's business operation is in Linn County). Horton states that the Linn County Sheriff's Office received over 400 telephone calls in 1988 and 1989 "from pet owners who said that their pets were missing and that they were concerned that their pets had been stolen and taken to the Hickeys' animal facility." The Linn County Sheriff's Office devised a form to use to record data from these callers. His office accumulated records of more than 600 such calls in 1988, 1989 and 1990.

■ Nothing in plaintiff's memorandum or in the subsequent affidavit from Lt. Horton obtained by plaintiff contradicts Horton's affidavit submitted by defendants. Horton's affidavit for plaintiff does not retract or contradict the sworn statement in the first Horton affidavit: that the callers expressed concern that their missing pets had been stolen and taken to Hickey's facility. Further, I find that conclusion is not affected by Horton's statement, in his second affidavit, that he does not believe that plaintiff was dealing in stolen pets. What Horton's belief is with respect to plaintiff's business operation is immaterial to this motion. *Schuler v. Chronicle Broadcasting Co.*, 793 F.2d 1010, 1011 (9th Cir.1989) ("subjective personal judgments do not raise a genuine issue of material fact"). Plaintiff's argument that defendants were required to broadcast Horton's

opinion that he did not think Hickey was involved in dealing with stolen pets does not establish that defendants' statements were false.

Based on Horton's affidavit and information, 20/20's statement that "more than 300 people in Central Oregon have complained that their pets were stolen and delivered to Hickeys' operation" is substantially true. Summary judgment is therefore granted for defendants on this statement.

■ The second category of statements alleged false by plaintiff is that plaintiff is "dealing in" and "accepting" stolen pets. Defendants rely on the affidavits of Lt. Horton and Officer Amodei which state that four different individuals were convicted of stealing pets in Linn and Benton Counties between February 1989 and February 1990. Each of these convicted thieves delivered the stolen animals to plaintiff's facility. One individual, Ella Snapp, delivered seventeen animals to plaintiff between September 1988 and April 1989. Another individual delivered four animals to plaintiff during that time period.

Defendants also rely on plaintiff's deposition testimony taken in December 1990 in his state court libel action against Merthal Settlemier. Plaintiff conceded that he received "a small percentage" of stolen animals, however, he added that "in every case there was a recovery of the animal by the sheriff's department in full cooperation of my office." Plaintiff then consulted with his attorney and made an additional statement that he "at no time dealt in stolen animals, that [he] at no time trafficked the stolen animals ... there were several individuals that did in fact *attempt* to sell us animals for medical research that were in fact stolen" (emphasis added). I find that Horton's and Amodei's affidavits show that not only did several individuals attempt to sell plaintiff stolen animals, but did in fact do so. Defendants have presented sufficient evidence that those statements can be considered as substantially true.

■ The third category of statements concern 20/20's statement that "other[s] charge that the Hickeys not only accept stolen pets, they actively encourage people to do the stealing for them" and that plaintiff "solicited or permitted stolen pets to be brought to him."

Defendants assert that the fact that Hickey accepts stolen pets is proven by the evidence above, while the statement that plaintiff actively encouraged others to do the stealing for him is supported by Officer Amodei's affidavit. Amodei has been an animal control officer in Corvallis since July 1988. Officer Amodei investigated Ella Snapp, a regular supplier of stolen animals to plaintiff, and concluded based on Snapp's statements and Amodei's review of United States Department of Agriculture's records that plaintiff did, in fact, encourage other people to steal animals for him. Defendants quote at length from Officer Amodei's interview with Snapp that led Officer Amodei to conclude that plaintiff had encouraged Snapp to steal animals. Snapp told Officer Amodei that Hickey told Snapp how much money she could make by bringing animals to his facility to sell. Snapp said she was amazed at how much money was involved. Snapp then decided to start picking up dogs. Snapp also reported that Hickey would at times pay her in advance because he knew who she was and he knew she was good for it because she would be bringing in more animals.

Officer Amodei also obtained copies of Hickey's records of animals received by him from the Department of Agriculture. It was Amodei's opinion that because those records showed that several individuals (like Snapp and Mack) brought several different animals to Hickey on several different occasions, that Hickey knew or should have known that there was a high probability that the animals were stolen. Thus, there is substantial truth in 20/20's statement that "others charge" that Hickey "accept[ed] stolen pets" and "actively encourag[ed]" other people to steal for him.

■ As for the statements contained in plaintiff's fifth paragraph about 20/20's references to a "black market in stolen pets," to "a low, repulsive crime," and to

"a rotten trade," defendants argue that those statements are either true, not "of and concerning plaintiff," or non-defamatory expressions of opinion.

The challenged comments must first be put in context. Hugh Downs opened the "Pet Bandits" segment with the following narration:

> To lose a pet at any time is heartbreaking, but tonight, we'll show you how it can take a horrid twist, your dog or cat stolen, not because somebody wants him for a pet. He's stolen to be sold to medical researchers and sold for big money. Stone Phillips has our report, inspired by a letter from one of you. Stone has found evidence of a *black market in stolen pets.* This is *a low, repulsive crime* and it seems to be occurring nationwide, but our investigation starts in the Pacific Northwest.

At the conclusion of the segment, Downs offered his reaction to it: "Man, what a *rotten trade.* People's pets."

Defendants assert that the reference to "black market" was substantially true. "Black market" is defined as "illicit trade in goods or commodities in violation of official regulations." Defendants argue that a person who buys stolen pets and resells them (presumably for a profit) is obviously engaged in an "illicit trade." I find that it is substantially true that defendants presented evidence of a "black market" regarding stolen or missing pets.

■ As for 20/20's reference to a "low, repulsive crime," defendants argue that it is clear upon reading the entire transcript of the program that that language refers to the crime of pet stealing. *See* exhibit attached to defendants' motion for summary judgment. The program refers explicitly to animal thefts carried out by two teenage boys and by Ella Snapp. The program also states that "the Hickeys have never been charged with stealing pets." Therefore, these comments were not "of and concerning the plaintiff."

■ As for 20/20's use of the words "low," "repulsive," and "rotten," defendants argue that those are assertions of opinion and cannot be a basis for libel claim under Oregon law. Under Oregon law, "expression of ... strong opinions [on a matter of public concern] are not libelous." *King v. Menolascino,* 276 Or. 501, 555 P.2d 442 (1976). Whether the business of buying and selling stolen pets is "low," "repulsive," or "rotten" is not "provably false." *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 110 S.Ct. 2695, 2706, 111 L.Ed.2d 1 (1990) ("a statement on matters of public concern must be provable as false before there can be liability under state defamation.... a statement of opinion relating to matters of public concern, which does not contain a provably false factual connotation will receive full constitutional protection [under the first amendment]").

I find these statements are expressions of opinion and therefore protected by the first amendment. Further, these statements are not "of and concerning the plaintiff." When Downs' statements are viewed in context it is clear that Downs was offering his opinion about the activity of dealing in stolen pets. Downs did not mention plaintiff, or refer to him in any way, during his brief introductory and concluding remarks.

CONCLUSION

Summary judgment is the preferred means of dealing with first amendment cases due to the chilling of first amendment rights inherent in expensive and time-consuming litigation. *Basilius v. Honolulu Pub. Co., Ltd.,* 711 F.Supp. 548, 550 (D.Hawaii), *aff'd without opinion* 888 F.2d 1394 (9th Cir.1989).

Oregon case law holds that where there is no dispute of the underlying facts, as is the case here, then the question of whether a statement is "substantially accurate" is one of law for the courts. *Ettinger,* 88 Or.App. at 422–23, 745 P.2d 807.

Plaintiff's Memo in Opposition is barren of any disputed issues of material fact that would prevent this court from entering summary judgment for the defendants. Plaintiff relies on several affidavits from various law enforcement officials and members of the general public, however, those affidavits fail to raise any disputed issues

of fact, or to directly address defendants' arguments. Plaintiff's memorandum does nothing to refute the facts submitted by defendants establishing that the allegedly defamatory statements were substantially true. Instead, plaintiff merely argues that defendants could have obtained statements or opinions regarding plaintiff and his business different from those broadcast by defendants. Plaintiff does not, however, present any facts that establish the falsity of the statements that defendants did broadcast.

I find that defendants' statements are substantially true (as in the first three categories of statements) or protected opinion on a matter of public concern (as in the last category of statements).

Defendants' summary judgment motion is granted and this case is dismissed. Defendants' Motion for Protective Order and plaintiff's Motion to Compel are denied as moot.