**Pamela P. FREYD, et al., Plaintiff,**

v.

**Charles L. WHITFIELD, Defendant.**

Civil No. L–96–627.

United States District Court,
D. Maryland.

July 18, 1997.

Thomas A. Pavlinic, Annapolis, MD, for plaintiffs.

Theodore Sherbow, Henry R. Abrams, David W. Erb, for defendant.

## MEMORANDUM

LEGG, District Judge.

Before the Court is a Motion for Summary Judgment filed by defendant, Dr. Charles L. Whitfield. For the reasons stated below, the Court shall, by separate Order, GRANT the motion.

## I. Background

In December 1990, plaintiffs Peter and Pamela Freyd ("the Freyds") privately were accused of childhood sexual abuse by their 33–year old daughter, Dr. Jennifer Freyd. (Resp.Mot.Summ. J. ("Resp.") at 12). Dr. Freyd, a tenured psychology professor specializing in human memory, claimed that she had recovered repressed memories of sexual abuse which had been long suppressed in a form of "traumatic amnesia." (Mem.Supp. Mot.Summ. J. ("Mot.") at 3, 4).

In response, the Freyds mounted a public campaign, challenging the validity of such recovered memories. In 1992, they formed the False Memory Syndrome Foundation ("FMSF"), aggressively contesting the existence of traumatic amnesia and repressed memories. (Resp. at 12). Plaintiffs relied on various fora to publicize their foundation and "to debunk this preposterous theory," including: national television and radio appearances, congressional lobbying, public lectures, scientific conferences, on-line discussion groups, a newsletter, an 800 number, countless media articles, and the picketing of therapists' homes.[1] (Mot. at 9–14, 18, App. A; Resp. at 12 & 13 n. 8).

1. Over 247 articles about the Freyds and/or the FMSF have been published in national newspapers and magazines such as USA Today, The Washington Post, The Baltimore Sun, The Chica-

In addition, the Freyds have appeared personally on national news programs such as Frontline, Good Morning America, and National Public Radio. *Id.* This publicization proved very successful and, as both parties concede, controversy regarding the legitimacy of repressed memories has become well-known both in professional circles and among the general public.

Dr. Whitfield, a trauma psychologist, discussed the Freyd family controversy (mentioning both Jennifer Freyd's accusations and her parents' public denials) at three professional conferences for psychologists and social workers in 1995. (*Id.* at 20–22). A component of each lecture was a discussion of traumatic amnesia, in which Dr. Whitfield expressed his belief in repressed memories generally and Jennifer Freyd's accusations specifically. (*Id.*)

In August 1995, FMSF Advisory Board member Ralph Slovenko wrote to Dr. Whitfield, ostensibly seeking information about Dr. Whitfield's new book, *Memory and Abuse,* for a book review. (*Id.* at 23). In his response to Mr. Slovenko's inquiries, Dr. Whitfield referred to a published letter by Jennifer Freyd's uncle, in which the uncle claimed to have witnessed sexual abuse of the child.[2]

On February 1, 1996, the Freyds filed this defamation action against Dr. Whitfield in the Circuit Court for Baltimore County, citing Dr. Whitfield's response to Mr. Slovenko and Dr. Whitfield's three seminars. Dr. Whitfield removed the action to this Court shortly thereafter and subsequently filed the pending Motion for Summary Judgment.

## II. Legal Standard

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

In matters implicating First Amendment concerns, the Court has an affirmative obligation to be especially vigilant in considering a motion for summary judgment, to ensure that the continued pursuit of a flawed claim does not chill the unfettered exercise of free speech. *Fornshill v. Ruddy,* 891 F.Supp. 1062, 1074 (D.Md.1995), *aff'd,* 89 F.3d 828 (4th Cir.1996).

## III. Discussion

To establish a *prima facie* case of defamation, the Freyds must show: (1) a false and defamatory statement, (2) of and concerning the Freyds, published to a third party, (3) the requisite degree of fault, and (4) harm. *Henry v. National Ass'n of Air Traffic Specialists, Inc.,* 836 F.Supp. 1204, 1210 (D.Md.1993), *aff'd* 34 F.3d 1066 (4th Cir.1994). If the Freyds are found to be public figures, they must show that Dr. Whitfield acted with actual malice. *Id.; New York Times v. Sullivan,* 376 U.S. 254, 288–91, 84 S.Ct. 710, 730–32, 11 L.Ed.2d 686 (1964); *Gertz v. Welch,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).

### A. Actual Malice

Determining whether the Freyds are limited purpose public figures involves two steps.[3] First, the Court must decide whether a particular public controversy existed. *Foretich,* 37 F.3d at 1553. If so, the Court must then determine whether the na-

---

go Tribune, The Los Angeles Times, The Dallas Morning News, Newsweek, Time Magazine, and Psychology Today. (Mot. at App. A).

2. Like the other sources on which Dr. Whitfield relied, this letter was in the public domain. Jennifer Freyd's uncle wrote the letter to PBS in response to its two-part, four-hour Frontline documentary in which the Freyds appeared.

3. Public figures are persons who "thrust themselves to the forefront of particular public contro-

versies in order to influence the resolution of issues involved ... [thereby] invit[ing] attention and comment." *Gertz,* 418 U.S. at 345, 94 S.Ct. at 3009; *Foretich v. Capital Cities/ABC, Inc.,* 37 F.3d 1541, 1552 (4th Cir.1994); *Reuber v. Food Chemical News, Inc.,* 925 F.2d 703, 708 (4th Cir.), *cert. denied,* 501 U.S. 1212, 111 S.Ct. 2814, 115 L.Ed.2d 986 (1991). This determination is a question of law for the Court to decide. *Id.*

ture and extent of the Freyds' participation in the controversy was sufficient to justify public figure status. *Id.; Gertz,* 418 U.S. at 345, 94 S.Ct. at 3009–10. Because the parties do not dispute that repressed memory syndrome has engendered much controversy, the Court shall focus its analysis on the Freyds' role in this debate.[4]

■ The Fourth Circuit has enumerated five criteria for analyzing whether a plaintiff qualifies as a limited purpose public figure: (1) the plaintiff had access to effective channels of communication, (2) the plaintiff voluntarily assumed a role of special prominence, (3) the plaintiff sought to influence the outcome of the public controversy, (4) the controversy existed prior to publication of the statement, and (5) the plaintiff retained public-figure status at the time of the alleged defamation. *Fitzgerald v. Penthouse Int'l, Ltd.,* 691 F.2d 666, 668 (4th Cir.1982), *cert. denied,* 460 U.S. 1024, 103 S.Ct. 1277, 75 L.Ed.2d 497 (1983). The Freyds satisfy these requirements.

■ The Freyds, in response to their daughter's private accusations, mounted an extensive public campaign to disprove the existence of repressed memories. They established a foundation to "promote and sponsor competent scientific and medical research on False Memory Syndrome and disseminate the results to the public and professional community." (Resp. at 12–13). These efforts were largely successful, as the FMSF has broadcast its message widely through national newspapers and magazines, the Internet, and well-known television and radio news programs. (*Id.* at 13; Mot. at 9–14, 18, App. A).

■ As evidenced by their significant media presence, the Freyds had no difficulty "access[ing] effective channels of communication." [5] *Fitzgerald,* 691 F.2d at 668. Nor can the Freyds deny, after actively seeking this attention both personally and through their foundation, that their role in the controversy was assumed voluntarily.[6] *Id.*

As stated above, the Freyds readily admit that they "sought to influence the outcome of the controversy" by countering public and scientific belief in repressed memories. *Fitzgerald,* 691 F.2d at 668. Lastly, the parties agree that this controversy began several years prior to Dr. Whitfield's statements, and has continued to this day. (Mot. at 8–19; Resp. at 7–14). As a result, the Court finds that the Freyds have made themselves into public figures, at least for the limited purpose of commenting on repressed memories and Jennifer Freyd's accusations.

■ Because the Freyds are public figures, they must show, by clear and convincing evidence, actual malice on the part of Dr. Whitfield in order to prevail on their defamation claims.[7] *Henry,* 836 F.Supp. at 1210–11; *New York Times,* 376 U.S. at 288–91, 84 S.Ct. at 730–32; *Gertz,* 418 U.S. at 345–47, 94 S.Ct. at 3009–10. This requires a showing that Dr. Whitfield either knew his statements were false, or acted with reckless disregard as to their truth or falsity. *Garrison v. Louisiana,* 379 U.S. 64, 74, 85 S.Ct. 209, 215–16, 13 L.Ed.2d 125 (1964) (defining reckless disregard as "high degree of awareness of ... probable falsity"). The Freyds have not proffered sufficient evidence to meet this heightened standard.[8]

■ The Freyds allege that Dr. Whitfield knew that several experts had rejected

---

4. Indeed, at an FMSF conference Pamela Freyd described the controversy as the "mental health issue of the century." (Mot. at 28).

5. Indeed, the Freyds boast that they have assisted over 30,000 families and professionals.

6. Had the Freyds merely replied privately to their daughter's initial attack, their conduct would not constitute a voluntary injection of oneself into the public eye. *Foretich,* 37 F.3d at 1560. Their behavior, however, far exceeded the scope of a mere reply. *Id.*

7. Inexplicably, although the Freyds dispute that they are public figures, they concede that "the plaintiff's burden in an action for defamation is to show that the defendant acted with actual malice." (Resp. at 22).

8. Proving actual malice is a heavy burden. It is insufficient to show that the defendant merely broadcast false statements, or spoke out of ill will. *Bose Corp. v. Consumers Union of U.S., Inc.,* 466 U.S. 485, 511, 104 S.Ct. 1949, 1965, 80 L.Ed.2d 502 (1984); *Garrison,* 379 U.S. at 73, 85 S.Ct. at 215.

his belief in repressed memories. (Resp. at 26). They argue, therefore, that Dr. Whitfield acted with malice because he failed "objectively [to] question Jennifer Freyd's allegations, despite the intensity of his personal beliefs." (*Id.* at 24). These allegations, however, are insufficient to support their claims.[9]

■ To establish malice, "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of the publication." *St. Amant*, 390 U.S. at 731, 88 S.Ct. at 1325. As the Freyds admit, Dr. Whitfield believed strongly in the statements he made. (Resp. at 24). Plaintiffs have proffered no evidence that Dr. Whitfield was aware that his statements were "false."

■ Moreover, malice cannot be established merely from Dr. Whitfield's acknowledgment that a smattering of experts disagreed with his opinion. *Peter Scalamandre & Sons, Inc. v. Kaufman, et al.*, 113 F.3d 556, 562 (5th Cir.1997) (holding that expert endorsement of a certain view does not foreclose all reasonable debate on the issue). The position he articulated has received extensive support from scientific authorities.[10] The fact that other experts held a contrary view does not provide a basis for a defamation claim.

Indeed, the essence of the First Amendment is to shield the free speech of scientists and authors such as Dr. Whitfield. The Constitution recognizes that scientific discourse in this country perseveres because of our "profound national commitment to the principle that debate on public issues should be uninhibited." *New York Times*, 376 U.S. at 270, 84 S.Ct. at 721. A rule requiring scientists and authors to guarantee the "truth" of their hypotheses would inevitably lead to self-censorship and would stifle the very debate that leads to scientific knowledge.

Accordingly, because the Freyds have failed to establish, by clear and convincing evidence, that Dr. Whitfield acted with constitutional malice, their defamation action cannot stand.

### B. Protected Opinion

■ The Freyds also have failed to show that Dr. Whitfield's remarks, taken in context, were defamatory. His beliefs in the viability of repressed memory syndrome and Jennifer Freyd's accusations qualify as constitutionally protected opinion. *Henry*, 836 F.Supp. at 1214; *Potomac Valve & Fitting Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1286 (4th Cir.1987).

■ As stated by this Court in *Henry*, "[g]enerally, while facts are actionable as libel, opinions are not." 836 F.Supp. at 1214. Although, as recognized in *Henry*, the Supreme Court has declined to extend absolute protection to statements of opinion, such statements are not actionable unless they are "provable as false" or "objectively verifiable." *Id.* at 1415 (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18–20, 22, 110 S.Ct. 2695, 2705–07, 2707–08, 111 L.Ed.2d 1 (1990)). *See also Potomac Valve*, 829 F.2d at 1289–90; *Chapin v. Knight–Ridder, Inc.*, 993 F.2d 1087 (4th Cir.1993).

■ The Court finds that Dr. Whitfield's statements cannot be objectively characterized as true or false. The existence of repressed memories remains hotly contested. As the Freyds concede, "it is the consensus of medical, scientific and legal communities that there is *no* uniform agreement on this issue." (Resp. at 25–26). Dr. Whitfield's

---

9. Dr. Whitfield's alleged failure to investigate Jennifer Freyd's accusations personally does not alone establish malice. *St. Amant v. Thompson*, 390 U.S. 727, 733, 88 S.Ct. 1323, 1326–27, 20 L.Ed.2d 262 (1968).

10. Traumatic amnesia is recognized as both a disorder and a symptom of various other disorders in the American Psychiatric Association's *Diagnostic and Statistical Manual of Mental Disorders* (4th ed. 1994) ("DSM–IV"). It has been documented in over 30 research studies since 1987. (Mot. at Ex. 56). Additionally, traumatic

amnesia has received considerable judicial recognition. *See Peterson v. Huso*, 552 N.W.2d 83, 84 n. 1 (N.D.1996) (citing numerous law review articles chronicling support in the mental health community); *Armstrong v. Lamy*, 938 F.Supp. 1018 (D.Mass.1996); *Phinney v. Morgan*, 39 Mass.App.Ct. 202, 654 N.E.2d 77, 80, *review denied*, 421 Mass. 1104, 656 N.E.2d 1258 (1995). *See also Hoult v. Hoult*, 57 F.3d 1 (1st Cir.1995). The Court, of course, makes no judgment as to its validity.

belief in repressed memories cannot, therefore, either be objectively proven false or verified as true. As a result, his remarks are non-actionable as constitutionally protected opinion.[11]

Moreover, the language and context of Dr. Whitfield's statements makes it clear that they represent his personal views. *Potomac Valve*, 829 F.2d at 1288. When discussing the Freyds, Dr. Whitfield employed speculative language, repeatedly qualifying his remarks and emphasizing the Freyds' denials.[12] *Id.* Hearing Dr. Whitfield's statements in the context of his lecture on repressed memory theory, rather than in isolation, a reasonable listener would recognize their subjective character and discount them accordingly. *Id.* Furthermore, such opinions are particularly appropriate, and expected, in the broader social context of an academic lecture. *Id.*

The Court concludes that Dr. Whitfield's remarks constitute protected opinion and thus cannot form the basis of a defamation action. Accordingly, he is entitled to judgment as a matter of law.

## IV. Conclusion

For the aforementioned reasons, the Court shall, by separate Order: (i) GRANT Dr. Whitfield's Motion for Summary Judgment, and (2) ENTER judgment on his behalf.

### ORDER

For the reasons stated in a memorandum of even date, the Court hereby:

(i) GRANTS Dr. Whitfield's Motion for Summary Judgment,

(ii) ENTERS judgment for Dr. Whitfield, and

(iii) DIRECTS the Clerk to CLOSE this case.

---

11. Additionally, it goes without saying that Dr. Whitfield's neutral descriptions of the Freyd family saga are not actionable, because it is not defamatory to report a third party's allegations of misconduct. *See, e.g., Price v. Viking Penguin, Inc.*, 881 F.2d 1426, 1444 (8th Cir.1989) ("We do not know how authors can ever write about controversies without reporting accusations and counter-accusations"), *cert. denied*, 493 U.S. 1036, 110 S.Ct. 757, 107 L.Ed.2d 774 (1990); *Hickey v. Capital Cities/ABC*, 792 F.Supp. 1195 (D.Or.1992), *aff'd*, 999 F.2d 543 (9th Cir.1993);

*Janklow v. Newsweek, Inc.*, 759 F.2d 644, 649 (8th Cir.1985), *rev'd on other grounds*, 788 F.2d 1300 (8th Cir.) (en banc), *cert. denied*, 479 U.S. 883, 107 S.Ct. 272, 93 L.Ed.2d 249 (1986); *Medina v. Time, Inc.*, 439 F.2d 1129, 1130 (1st Cir. 1971).

12. Examples include phrases such as, "Co-offenders [i.e. Pamela Freyd] may be 100% innocent," and "*if* [Peter Freyd] is an offender." (Mot., Ex. 61)(emphasis added).